**EXETER–WEST GREENWICH REGIONAL SCHOOL DISTRICT et al.**

v.

**Arthur R. PONTARELLI et al.**

**No. 82–363–Appeal.**

Supreme Court of Rhode Island.

June 2, 1983.

Bradford Gorham, Providence, for plaintiffs.

Dennis J. Roberts II, Atty. Gen., Forrest L. Avila, Counsel for the State Dept. of Educ., Amy R. Tabor, Maureen A. Hobson, Providence, for defendants.

OPINION

KELLEHER, Justice.

This advisory opinion to the United States District Court for the District of

Rhode Island had its genesis in the June 29, 1981 rejection by the Exeter-West Greenwich Regional School District committee of a request by one Thomas L. Ross that the committee pay his son's $925 tuition at St. Raphael Academy, a religiously affiliated school situated in Pawtucket. Mr. Ross appealed the rejection to the State Commissioner of Education. A hearing was held before the associate commissioner of education, who vacated the rejection in a decision that ordered the committee to pay the tuition to St. Raphael Academy or reimburse Mr. Ross for the tuition he had paid for the 1981–82 school year. After the Commission of Education had approved his associate's action, the committee then appealed to the State Board of Regents.

While the appeal was pending before the Board of Regents, the committee filed a complaint in the United States District Court asking for injunctive and declaratory relief. Subsequently, one William Haas, a taxpayer in the school district, was permitted to intervene, and the District Court granted his motion for a temporary restraining order.

All proceedings were stayed by the District Court pending an answer to its inquiry concerning the reach of G.L.1956 (1981 Reenactment) § 16–7–30, which, in essence, provides that a "community not maintaining a high school shall make provision for the free attendance of its children at some high school or academy approved by the state board of regents for education."[1]

The District Court has asked our advice about whether this statute requires a community that does not operate a high school to pay for the education of those resident students who choose to attend a "religiously-affiliated" high school even though the community already provides for free education at certain public high schools outside the community. Before responding to the District Court's inquiry, we would detail the pertinent stipulated facts.

The Exeter-West Greenwich Regional School District, as the name suggests, is composed of the towns of Exeter and West Greenwich. Although the district provides education for students from kindergarten through grade eight, it does not operate a high school. The district does provide for free attendance of its resident students at North Kingstown High School and Coventry Vocational Technical School. The school committee also pays tuition, not in excess of the amount paid for its students who attend North Kingstown High School, for students to attend other approved public high schools or vocational schools within the State of Rhode Island. Such students, however, must pay the transportation costs to and from such facilities. In a policy statement first issued by the committee in January 1976 and revised in September 1980, the committee expressly stated that the tuition payments would be made "only" to those "public" high schools that are situated in the State of Rhode Island and approved by the Commissioner of Education.

The commissioner, in his decision, made inquiry about the committee's "motive" in pursuing the course that it did. He raised three possible motives: (1) a belief that public schools were academically superior to nonpublic schools, (2) a fear of a constitutional challenge, based upon First Amendment grounds, should funds be expended, and (3) a belief that parents who send their children to nonpublic schools are in less need of financial assistance than the parents of public-school children. As the commissioner felt there was no rational purpose served by the committee's policy, he "invalidated" the decision as being "totally arbitrary." We believe that the commissioner's motivational research was uncalled for, and we disagree with his conclusion.[2]

1. The term "community" is defined in G.L.1956 (1981 Reenactment) § 16–7–16(a), as amended by P.L.1981, ch. 367, § 1, as "any city, town or regional school district established pursuant to law * * *."

2. At this point it should be noted that the committee, in turning to the Federal Court after taking the appeal to the Regents, abandoned the appellate procedural route that was laid out

When the language of a statute is unambiguous and expresses a clear and sensible meaning, such a meaning is presumed to be the one intended by the Legislature and the statute must be applied literally. *Citizens for Preservation of Waterman Lake v. Davis,* R.I., 420 A.2d 53, 57 (1980). Section 16–7–30 is just such a statute. It states in simple and direct English that when a community (such as the Exeter-West Greenwich School District) does not operate a high school for the benefit of its residents, it shall provide for the free attendance of such students "at some high school or academy approved by the state board of regents for education."

Here, the statutory mandate has been obeyed by the school district in affording to its high-school population the opportunity to attend either North Kingstown High School or Coventry Vocational Technical School. Under the plain language of § 16–7–30, it is obligated to do no more. The use of the word "some" indicates the class of high schools from which the school district could choose in discharging its statutory obligation. Thus, the ad hoc allowance of attendance at public-educational facilities in communities other than North Kingstown or Coventry is but another manifestation of the discretion delegated to the respective school committees by § 16–7–30. There is nothing in its language that would justify the belief that the Legislature intended that a school committee would be compelled to provide free attendance at secondary schools other than those selected by the committee.

It may be that there is some committee which shares the commissioner's belief that

there is no constitutional bar to the payment of tuition to an academy such as St. Raphael and is willing to make such an expenditure. However, the discretion to make such a choice, by the crystal-clear language of the statute, rests with the respective school committees[3] and not with the Commissioner of Education.

Accordingly, we answer the inquiry posed to us by the District Court in the negative.

---

by this court in *Jacob v. Burke,* 110 R.I. 661, 669–70, 296 A.2d 456, 461 (1972), where we ruled that all persons, with the exception of a tenured teacher dismissed for cause or a nontenured teacher whose contract had not been renewed, who are aggrieved by a decision of the school committee are entitled to appeal to the Commissioner of Education and, if necessary, from the commissioner to the Board of Regents; and if judicial review is then sought, it is by way of common-law certiorari to this court.

**3.** The district superintendent of schools testified that the tuition for a child to attend North Kingstown High School for the 1981–82 school year amounted to $1,814.72; as noted earlier in this opinion, at St. Raphael Academy the tuition for the 1981–82 school year was $925. We would also emphasize that our reference to the commissioner's belief as to the reach of the First Amendment's establishment clause should in no way be construed as an approval of the views he expressed.