**EXETER–WEST GREENWICH REGIONAL SCHOOL DISTRICT, et al., Plaintiffs, Appellees,**

**v.**

**Arthur R. PONTARELLI, Commissioner of Education For Rhode Island, et al., Defendants, Appellants.**

No. 85–1459.

United States Court of Appeals, First Circuit.

Heard Jan. 9, 1986.

Decided April 4, 1986.

---

Forrest L. Avila, Warren, R.I., for defendants, appellants.

Edmund L. Alves, Jr., with whom Bradford Gorham and Gorham & Gorham, Inc., Providence, R.I., were on brief, for plaintiff, appellee Exeter-West Greenwich Regional School Dist.

Amy R. Tabor, Pawtucket, R.I., for plaintiff, appellee William Haas.

Before COFFIN, BOWNES and TORRUELLA, Circuit Judges.

BOWNES, Circuit Judge.

Defendants, Commissioner and Associate Commissioner of Education of the State of Rhode Island (Commissioner) [1], appeal from an order of the district court requiring them to pay attorney's fees to plaintiffs, the Exeter-West Greenwich Regional School District (School District) of Rhode Island and a taxpayer resident of that district. The district court found plaintiffs to

---

1. The Associate Commissioner of Education issued the decision and order which plaintiffs claim violated the Constitution. The Commissioner approved it. For simplicity, we will do as the district court did and treat the defendants as one.

be "prevailing parties" under the terms of 42 U.S.C. § 1988 in their § 1983 action against the Commissioner.[2] The complaint alleged that the Commissioner violated the first and fourteenth amendments of the United States Constitution when he issued a decision interpreting R.I.Gen.Laws § 16–7–30 (1981) to require the School District to pay tuition for a student to attend a religiously affiliated high school and ordering it to take certain steps to comply with that decision. The § 1983 action was later dismissed as moot when the Rhode Island Supreme Court, on certification from the district court, ruled that the Commissioner had misconstrued Rhode Island law. The amount of attorney's fees has been stipulated to by the parties, and the only issue on appeal is whether the Commissioner is liable for those fees under § 1988.

### I.

The plaintiff School District does not operate a high school. Its policy under R.I. Gen.Laws § 16–7–30 (1981)[3] is to pay the tuition for the District's students to attend either of two neighboring public high schools, or to pay up to that amount for students to attend any public high school in Rhode Island. This case arose when a parent sought to have the School District pay tuition for his son to attend a religiously affiliated private academy, and both the Superintendent of Schools and the School Committee denied his request. The parent appealed the denials to the Commissioner, who issued a decision construing the Rhode Island statute to require the School District to provide tuition for students to attend *any* public, private, or religiously affiliated high school in Rhode Island, absent a rational motive for limiting the choice of high schools. Finding no rational motive for the School District's choice of the two neighboring public high schools, the Commissioner ordered the School District to pay the tuition for attendance at the religious aca-

demy. On a request for stay, the Commissioner amended his order to require the School District to create a separate bank account and to pay into it the amount of the tuition pending final appeal of the decision. The School District appealed the Commissioner's decision to the Board of Regents for Education pursuant to R.I. Gen.Laws § 16–39–3 (1981). A decision by the Board of Regents is final unless certiorari is granted to hear the appeal by the Rhode Island Supreme Court.

After filing their administrative appeal, plaintiffs instituted an action in federal district court for declaratory and injunctive relief, asking that the Commissioner's order be rescinded as an unconstitutional establishment of religion under the first and fourteenth amendments. Plaintiffs also moved for a temporary restraining order, which was granted. The state Board of Regents announced that it would defer action on the appeal until the district court ruled on the merits of plaintiffs' complaint.

After stipulations of fact and memoranda of law were submitted, the district court moved *sua sponte* to certify to the Rhode Island Supreme Court the following question:

> Does R.I.Gen.Laws § 16–7–30 require a community not maintaining a high school to fund the education of those resident students who choose to attend religiously-affiliated high schools where the community already provides for free education at certain public high schools outside the community?

Plaintiffs and defendants briefed and argued the question before the Rhode Island Supreme Court. The court answered the question in the negative, ruling that the School District had acted in accord with the law in choosing certain public schools to which it would pay tuition for its students. *Exeter-West Greenwich Regional School District v. Pontarelli*, 460 A.2d 934 (R.I.

---

2. Plaintiffs' original complaint was brought under 42 U.S.C. § 1983, and 28 U.S.C. §§ 1331, 1343(3), 2201, 2202 (1970).

3. R.I.Gen.Laws § 16–7–30 states: "A community not maintaining a high school shall make provision for the free attendance of its children at some high school or academy approved by the state board of regents for education."

1983).[4] The district court then dismissed the plaintiffs' complaint as moot. After the plaintiffs filed motions for attorney's fees pursuant to 42 U.S.C. § 1988, the district court issued an order ruling they were "prevailing parties" and were entitled to fees. A stipulation as to the amount of the fees was entered into and judgment for plaintiffs was entered. Defendant then took this appeal.

As we understand defendant's brief, he challenges the fee order on the following grounds: (1) that the plaintiffs are not the prevailing parties; (2) that, if the plaintiffs are considered to be the prevailing parties, they did not prevail in an action to enforce § 1983; (3) that the district court had no jurisdiction over the state-law question on which the plaintiffs did prevail; (4) that the eleventh amendment bars attorney's fees; and (5) that there is either no case or controversy or the case is not ripe for adjudication.

## II.

42 U.S.C. § 1988 states in pertinent part: In any action or proceeding to enforce a provision of section[ ] ... 1983 ..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Our cases have set out two standard tests for determining when a party shall be deemed "prevailing" under § 1988. In *Nadeau v. Helgemoe*, 581 F.2d 275 (1st Cir. 1978), we held that § 1988 permitted an award of attorney's fees to plaintiffs who gained relief from the constitutional violations alleged in their complaint against state prison officials for both that part of their case that resulted in a judgment on the merits and that part of their case that was settled by a favorable consent decree. We stated that there were two alternative tests for determining when a plaintiff shall be deemed "prevailing." The first we now

call the "merits" test. The second is already known as the "catalyst" test.

█ Under the first *Nadeau* test, the merits test,

plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.

*Id.* at 278–79. The Supreme Court endorsed this test in *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). In *Lund v. Affleck*, 587 F.2d 75 (1st Cir.1978), we held that the merits test is met, and attorney's fees may be awarded, when a party prevails not on any part of the § 1983 claim but on a pendent, nonconstitutional statutory claim, if the § 1983 claim was "substantial and ... the successful pendent claim arose from the same nucleus of facts." *Lund v. Affleck*, 587 F.2d at 77. We relied on the express language of the House Report accompanying the enactment of § 1988:

In some instances ... the [§ 1983] claim ... may involve a constitutional question which the courts are reluctant to resolve if [a pendent] non-constitutional claim is dispositive. *Hagans v. Lavine*, 415 U.S. 528 [94 S.Ct. 1372, 39 L.Ed.2d 577] (1974). In such cases, if the claim for which fees may be awarded meets the "substantiality" test, *see Hagans v. Lavine*, supra; *United Mine Workers v. Gibbs*, 383 U.S. 715 [86 S.Ct. 1130, 16 L.Ed.2d 218] (1966), attorney's fees may be allowed even though the court declines to enter judgment for the plaintiff on that claim, so long as the plaintiff prevails on the non-fee claim arising out of a "common nucleus of operative fact." *United Mine Workers v. Gibbs*, supra at 725 [86 S.Ct. at 1138].

H.R.Rep. No. 94–1558, 94th Cong., 2d Sess., *reprinted in* Subcommittee on Constitutional Rights of the Senate Comm. on

---

**4.** In construing the statute, the Rhode Island Supreme Court stated: "There is nothing in its language that would justify the belief that the Legislature intended that a school committee

would be compelled to provide free attendance at secondary schools other than those selected by the committee." 460 A.2d at 936.

the Judiciary, *Civil Rights Attorney's Fees Awards Act of 1976, Source Book: Legislative History, Texts, and Other Documents* at 212 n.7 (Comm.Print 1976). Although in the present case the dispositive issue was not a pendent claim but a state-law question certified to the state supreme court, we think that the same analysis is appropriate. As we recently said in *Aubin v. Fudala*, 782 F.2d 287 (1st Cir.1986): " '[V]ictory' in a civil rights suit is typically a practical, rather than a strictly legal matter." *Id.* at 291.

■ Applying the merits test we find that plaintiffs have achieved not some but *all* the benefit they sought from their § 1983 claim. They challenged the validity of the Commissioner's decision and succeeded in having it overturned. The state-law issue on which they prevailed also arose from the same nucleus of common fact as the § 1983 issue—the Commissioner's decision. It was significant and substantial since its resolution disposed of the entire matter. Finally, the state-law issue was an issue "in litigation" even though it was not raised in the pleadings and, under *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 121, 104 S.Ct. 900, 919, 79 L.Ed.2d 67 (1984), could not have been pendent to the § 1983 claim unless the state waived its immunity. It was part of the case, and therefore "in litigation," because the district court determined that under the abstention doctrine of *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941), and *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976), the issue had to be decided by the Rhode Island Supreme Court before the federal court could reach the constitutional issues in the case. We find the merits test is met.

Defendant invokes *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, arguing generally that it prevents us from interpreting § 1988 so as to allow a district court to award fees for state-court proceedings that litigated and determined a state-law issue

over which the district court did not have jurisdiction. We do not think that *Pennhurst* cuts such a wide swath. Indeed, *Pennhurst* encourages by implication the very certification procedure the district court employed here. The only way to harmonize the federalism concerns of *Pennhurst*, the abstention doctrine of *Pullman*, and Congress' desire to create an incentive under § 1988 for plaintiffs to seek enforcement of federal civil rights law in federal courts, is by awarding fees in certification cases.

■ We agree with the statement by the Ninth Circuit in *Bartholomew v. Watson*, 665 F.2d 910 (9th Cir.1982), that if fees are not allowed for work done in state-court proceedings when the district court abstains from deciding federal § 1983 claims arising out of the same facts

> serious strains between the state and federal court systems might develop. State defendants would be required to seek abstention until involved state law was adjudicated in state courts. Plaintiffs seeking relief under section 1983 would be compelled to oppose any move from federal court, despite the fact that an initial determination of certain matters by the state court might simplify or even moot the federal action because of the loss of the right to claim attorney's fees under section 1988. A plaintiff's attorney would be penalized if some of his client's section 1983 claims were disposed of in a state forum. The ability to obtain counsel would therefore suffer. This double standard of awarding attorney's fees would encourage forum shopping and interfere with efficient allocation of issues and cases between the state and federal systems.

*Id.* at 913. There is solid precedent for allowing fees under § 1988 for work done in a state court. *See Lampher v. Zagel*, 755 F.2d 99 (7th Cir.1985) (fees permitted plaintiffs for defense of state confiscation proceedings, district court had stayed § 1983 proceedings at the defendant's request); *Stathos v. Bowden*, 728 F.2d 15

(1st Cir.1984) (fees permitted plaintiffs under § 1988 for defense of state declaratory judgment action brought by defendants in anticipation of plaintiff's § 1983 action); *Bartholomew v. Watson,* 665 F.2d 910 (fees permitted plaintiffs for work done in state court proceedings to determine potentially conclusive state-law question, the district court had stayed proceedings at the defendants' request).

The Supreme Court has also recently indicated in *Webb v. Board of Education of Dyer County, Kentucky,* — U.S. —, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985), that in some cases state-court proceedings may be such an integral part of a federal § 1983 action that they are compensable under § 1988. In *Webb* the Court acknowledged that fees may be awarded for a "discrete portion" of work done in state proceedings "useful and of a type ordinarily necessary" to the successful outcome of the litigation. *Id.* at —, 105 S.Ct. at 1929. *See also id.* at —, 105 S.Ct. at 1930–31 (Brennan, J., concurring and dissenting). Although the holding in *Webb* denied fees for work done by plaintiff's attorney in state proceedings, those proceedings were pursuant to state administrative remedies which were concluded before the federal § 1983 action was filed. Because there is no exhaustion requirement for bringing a § 1983 suit, *Patsy v. Board of Regents of the State of Florida,* 457 U.S. 496, 501, 102 S.Ct. 2557, 2560, 73 L.Ed.2d 172 (1982), the completed state administrative proceedings in *Webb* could not be said to have been an integral part of the federal action. *Webb v. Board of Education,* — U.S. at —, 105 S.Ct. at 1927–28. *Cf. New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980) (under Title VII, where exhaustion of administrative remedies is required before suit may be brought, attorney's fees for prior state administrative proceedings are recoverable).

We hold that *Pennhurst* does not bar us from finding that plaintiffs are "prevailing parties" under the merits test.

The second test set out in *Nadeau,* 581 F.2d 275, the catalyst test, applies to plaintiffs who have succeeded in achieving favorable results because of the filing of their § 1983 claim, but have not had a final judgment on the merits entered in their favor. Plaintiffs must first show that their "suit and their attorney's efforts were a necessary and important factor in achieving" an end result favorable to them. *Id.* at 281. They must also show that their unadjudicated constitutional claim was not "frivolous, unreasonable, or groundless." *Id.*

■ Applying the catalyst test here, we find that the filing of plaintiffs' § 1983 suit and their attorneys' efforts both in federal court and in the certification proceedings before the Rhode Island Supreme Court were "necessary and important factors in achieving" a reversal of the Commissioner's decision. The favorable ruling by the Rhode Island Supreme Court was a direct result of the federal § 1983 action. Defendant claims the § 1983 action was not "necessary" to the result because the ordinary administrative appeal route would have also ended at the state supreme court. This argument overlooks two factors: that the Rhode Island Supreme Court could have denied certiorari to an appeal from a decision of the Board of Regents, and that a party need not exhaust his state administrative remedies before bringing a § 1983 action, *Patsy v. Board of Regents,* 457 U.S. at 501, 102 S.Ct. at 2560.

■ Defendant urges that the mooting of the § 1983 action is dispositive. The law is otherwise. The Supreme Court in upholding an award of attorney's fees to plaintiffs who prevailed on a consent decree, and not on final judgment, noted that

[n]othing in the language of § 1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated. Moreover, the Senate Report expressly stated that "for purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief."

S.Rep. No. 94–1011, p. 5 (1976), U.S.Code Cong. & Admin.News 1976, pp. 5908, 5912.

*Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980). The law in this and other circuits is that plaintiffs may be "prevailing parties" for purposes of § 1988 even though their § 1983 action was dismissed as moot. *See, e.g., Grano v. Barry,* 733 F.2d 164, 168 n.2 (D.C.Cir.1984); *Coalition for Basic Human Needs v. King,* 691 F.2d 597 (1st Cir.1982); *Doe v. Busbee,* 684 F.2d 1375, 1379 (11th Cir.1982); *Morrison v. Ayoob,* 627 F.2d 669 (3d Cir.1980), *cert. denied,* 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981); *Doe v. Marshall,* 622 F.2d 118, 120 (5th Cir.1980), *cert. denied,* 451 U.S. 993, 101 S.Ct. 2336, 68 L.Ed.2d 855 (1981); *Williams v. Alioto,* 625 F.2d 845 (9th Cir.1980), *cert. denied,* 450 U.S. 1012, 101 S.Ct. 1723, 68 L.Ed.2d 213 (1981). We find that the catalyst test has also been met.

■ Defendant also challenges the award of attorney's fees on eleventh amendment grounds. As we construe it, he argues that since *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, holds that eleventh amendment sovereign immunity bars the federal courts from deciding pendent state-law claims against state officials that impact directly on the state, *id.* at 117, 104 S.Ct. at 917, it must also bar federal courts from awarding fees for work done in pursuing certified state-law claims before a state supreme court. This overlooks *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), *reh'g denied,* 439 U.S. 1122, 99 S.Ct. 1035, 59 L.Ed.2d 83 (1979), and *Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, cases that reject this eleventh amendment argument.

*Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, held that Congress abrogated the states' eleventh amendment sovereign immunity when it enacted § 1988, permitting private persons to recover attorney's fees against a state when they prevail in actions for declaratory or injunctive relief under § 1983. *Id.* at 693–94, 98 S.Ct. at 2574–75.

*Hutto* built on *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), where the Court had recognized Congress' power under § 5 of the fourteenth amendment to abrogate the states' eleventh amendment sovereign immunity. *Id.* at 455–56, 96 S.Ct. at 2671. *Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, then went a step further. In *Maher* a § 1983 action was brought for various constitutional and Social Security Act violations, and the case was eventually settled with a consent decree. The Supreme Court rejected the argument that an award of attorney's fees can only be made against the state if the district court enters judgment for a constitutional violation. The Court held that if a plaintiff alleges violations of her constitutional rights which are "sufficiently substantial to support federal jurisdiction under *Hagans v. Lavine,* 415 U.S. 528, [94 S.Ct. 1372,]" and these constitutional issues "remain[ ] in the case until the entire dispute [i]s settled," then the eleventh amendment claim is foreclosed by *Hutto. Maher v. Gagne,* 448 U.S. at 130–31, 100 S.Ct. at 2575. All nine justices "accept[ed] *Hutto* as binding precedent for this case." *Maher,* 448 U.S. at 135, 100 S.Ct. at 2577 (Powell, J., concurring). *Maher* is met here. There is no question that plaintiffs in this case raised a "substantial" constitutional question under the establishment clause that supported federal jurisdiction, *see Hagans v. Lavine,* 415 U.S. 528, 536–41, 94 S.Ct. 1372, 1378–81, 39 L.Ed.2d 577 (1974), and that this question remained in the case until disposition of the state-law issue mooted it.

Defendant argues that following *Pennhurst* we must find this case differs from *Maher* for purposes of eleventh amendment sovereign immunity because in *Maher* all the work for which fees were granted was done in pursuit of claims over which the district court had jurisdiction. Here, the work in question was to litigate a state-law issue over which the district court could have no jurisdiction unless the defendant waived sovereign immunity. Noth-

ing in our reading of *Pennhurst* suggests that we should distinguish this case from *Maher*. We have already noted that interpreting § 1988 to allow an award of attorney's fees in a certification case will best harmonize *Pennhurst* with the *Pullman* abstention doctrine and Congress' intent in enacting § 1988. *Hutto* teaches that Congress has the power to abrogate the eleventh amendment in order to enforce the fourteenth amendment, and that it exercised that power when it enacted § 1988. We think it follows that the eleventh amendment sovereign immunity has been abrogated, and that attorney's fees may be awarded in any case where fees are allowed under either the merits or catalyst test and the *Maher* requirements are met. Since this case meets both tests, and satisfies the requirements of *Maher*, we hold that an award of fees is not barred by the eleventh amendment.

■ Finally, defendant argues that there is no case or controversy because "there is no allegation that [any enforcement] powers were used or that their use was threatened" by the Commissioner, and says that "it is doubtful" whether this case is "ripe" for adjudication because the Board of Regents had not yet acted. Neither argument has merit. The Commissioner issued a final decision construing the Rhode Island statute, and ordered the school district to pay tuition for the son of a school district resident to attend a religiously affiliated high school. It later amended its order to require the money be paid into a special account pending final appeal of its decision. The district court later issued a temporary restraining order against the Commissioner's order. Surely a live case and controversy existed. Defendant's ripeness argument fails because the exhaustion of administrative remedies is not required before a § 1983 suit may be filed.

The order of the district court is *affirmed.*

Costs to appellees.