STATE OF MAINE
YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-98-056
REC- YOR- 4/1/2002

NORMAN BANGS AND
BLUEBERRY RIDGE MOBILE
VILLAGE, INC.,

Plaintiffs

v.

ORDER ON PLAINTIFFS'
APPLICATION FOR AWARD
OF ATTORNEY'S FEES

THE INHABITANTS OF THE TOWN
OF WELLS, MAINE, THE ZONING
BOARD OF APPEALS OF SAID TOWN,
AND BARBARA GAGNON, IN HER
CAPACITY AS CODE ENFORCEMENT
OFFICER OF SAID TOWN

Defendants

## ORDER ON PLAINTIFFS' APPLICATION FOR AWARD OF ATTORNEY'S FEES

The plaintiffs, Norman Bangs and Blueberry Ridge Mobile Village (collectively "Bangs" or "the plaintiffs"), filed an application requesting an award of attorney's fees and expenses pursuant to M.R. Civ. P. 54(b)(3) and 42 U.S.C. § 1988. Upon review of the application, the opposition, and the relevant law, the application for attorney's fees and costs will be denied.

## BACKGROUND

Norman Bangs owns Blueberry Ridge Mobile Village ("Blueberry Ridge"), a parcel of land consisting of 51 mobile homes on 43.8 acres, and operated as a mobile

home park.[1] In 1989, after the Mobile Home Park Overlay District was created by the Town of Wells ("Town"), Blueberry Ridge became a nonconforming use, but was grandfathered as a legally existing nonconforming use. In 1998, Norman Bangs submitted a proposal for expansion that contemplated adding 38 new sites to the existing mobile home park. A number of the new sites were included within the boundaries of the original 43.8 acre parcel of Blueberry Ridge. However, in order to meet the then-existing density requirements for a site built residential subdivision of 100,000 square feet per site (rather than mobile home park density requirements), the expansion proposal relied upon the annexation of two abutting parcels of land owned by Bangs.

The Town denied Bangs' application. On appeal, the Zoning Board rejected Bangs' contention that Blueberry Ridge was a non-conforming *development*, and concluded that Bangs' proposed expansion effected substantial material changes to the original plan such that Blueberry Ridge would lose its grandfathered status and would be required to comply with current zoning, which loss would have precluded its existence as a mobile home park.

Bangs challenged the decision of the Zoning Board in an 80B appeal, and with independent claims which raised the following issues: (1) whether the Wells Land Use Ordinance (Chapter 138 of the Code of the Town of Wells) ("the Ordinance") as

---

[1] A mobile home park is defined as "a parcel of land under unified ownership approved by the municipality for the placement of 3 or more manufactured homes." 30-A M.R.S.A. § 4358(1)(B); See also, Wells, Me., Code § 2 (May 11, 1997). The tenants in a mobile home park rent the mobile home sites, place mobile homes which they own on the sites, and pay plaintiffs rent for the use of the land.

applied to the plaintiffs denied them equal protection under the federal and state constitutions; and (2) whether the Town failed to meet its obligations under 30-A M.R.S.A. § 4358(3)(M). Justice Brennan affirmed the decision of the Zoning Board as to the 80B appeal.

The independent claims were tried from November 1, 1999 to November 4, 1999. The court concluded that even if the Town's Ordinance had not precluded mobile home parks outside of certain approved areas, Bangs' application was not in compliance with the zoning regulations. Specifically, the court found that the proposed expansion plan would require encroachment on the reserved land, and would therefore change the Blueberry Ridge subdivision as originally approved; thus, the subdivision would lose the grandfathered density requirement. Because the plaintiffs' expansion plan would have to be denied no matter what type of housing or what type of ownership scheme was proposed, the court held that the plaintiffs failed to show that they were treated differently than they would have been had this not been a mobile home park and had these not been mobile homes. The court went on to hold that even if there had been disparate treatment, the Town had a rational basis for such disparate treatment - i.e., the effect that the mobility of the living units has on the size and shape of the mobile homes; and the effect that the type of ownership and tenancy have on the likelihood that the owner will make significant permanent improvements.

As to the applicable statute, 30-A M.R.S.A. § 4358(3)(M), the court concluded that the Town had complied with the terms of the law because it had provided areas

3

in which mobile home parks could be approved; and because it had considered the request for expansion and denied the request on the ground that the proposed plan would be an expansion of a non-conforming use in violation of the Ordinance.

The plaintiffs appealed the determinations that the Ordinance did not violate the equal protection clauses of the United States and Maine Constitutions, and that the Ordinance did not violate 30-A M.R.S.A. § 4358. On appeal, the Law Court concluded that the Ordinance violated 30-A M.R.S.A. § 4358(3)(M) because it did not permit the Town to give "reasonable consideration" to allow existing mobile home parks to expand in their existing locations. Bangs v. Town of Wells, 2000 ME 186, ¶ 17, 760 A.2d 632, 637. Having decided the plaintiffs' appeal on statutory grounds, the Law Court declined to reach Bangs' constitutional claims. Bangs, 2000 ME 186, ¶ 21 n.11, 760 A.2d at 638 n.11. Bangs now asserts an entitlement to attorney's fees under 42 U.S.C. § 1988, as a prevailing party.

## DISCUSSION

I.    Attorney's Fees Standard (42 U.S.C. § 1988)

Under 42 U.S.C. § 1988(b) (Supp. 2000):

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 . . . title VI of the Civil Rights Act of 1964 . . . or section 1981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . .

The United States Supreme Court has interpreted the word "may" to mean "must," unless special circumstances exist that would render an award unjust. Blanchard v. Bergeron, 489 U.S. 87, 89 n.1 (1989).

4

The plaintiffs are not foreclosed from obtaining attorney's fees under section 1988 even though the Law Court declined to consider the constitutional issue on appeal. A party qualifies as a "prevailing party" if the actual relief on the merits of the party's claim "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103, 112 (1992).

When a plaintiff recovers on the state rather than federal civil rights ground, the plaintiff must also show that (1) the federal civil rights claim is substantial enough to support federal jurisdiction, and (2) the statutory issue upon which the plaintiff prevailed arose from the same nucleus of common facts as the substantial federal claim to be considered a prevailing party. Maher v. Gagne, 448 U.S. 122, 133 n.15 (1980); Williams v. Hanover Housing Auth., 113 F.3d 1294, 1298 (1st Cir. 1997). A federal claim is insubstantial only if it is "obviously without merit" or its unsoundness "so clearly results from the previous decisions of [the Supreme Court] as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy." Hagans v. Lavine, 415 U.S. 528, 537-38 (1974).

If a party has *failed* on its constitutional claims, however, it would not be entitled to attorney's fees. See National Organization for Women v. Operation Rescue, 37 F.3d 646, 653-54 (D.C. Cir. 1994) ("[A] plaintiff who loses on the merits of its federal civil rights claim is not a 'prevailing party' for purposes of an award of attorneys' fees under 42 U.S.C. § 1988, even if it prevails on a related pendent state

5

law claim") (citations omitted). Rather, the justification for allowing the award of attorney's fees under a civil rights statute when a claimant prevails on state law grounds is to allow the courts to refrain from unnecessarily deciding constitutional questions. See e.g., Mateyko v. Felix, 924 F.2d 824, 828 (9th Cir. 1991) (relying on the House Report accompanying section 1988).

II. Was Bangs a Prevailing Party?

The Superior Court concluded that the equal protection clauses of the United States and Maine Constitutions had not been violated by the Town. Although on appeal the Law Court declined to reach the merits of Bangs' equal protection claims, it is instructive to compare Bangs' equal protection claims with the Law Court's opinion to determine if the Law Court's legal holdings preclude a determination that Bangs is a prevailing party.

A. Bangs' Appellate Brief

In laying the foundation for the appeal, Bangs asserted that the Ordinance provided for disparate treatment when the two criteria of mobile home parks were met - (1) manufactured housing, and (2) unified ownership - which, combined, distinguished mobile home parks and were used to limit such developments to the Overlay District. Bangs' Appellate Brief p. 3. According to Bangs' appellate brief, he argued in the Superior Court that the Ordinance's "disparate treatment of developments containing manufactured housing under unified land ownership was discriminatory and unreasonable" in violation of the equal protection clauses of the United States and Maine Constitutions. Bangs App. Brief p. 3. Bangs wanted to

6

have a mobile home park (i.e., manufactured housing and unified ownership) outside of the Overlay District, and argued that the Town's refusal to allow the expansion was an equal protection violation. Bangs App. Brief p. 5.

Bangs argued to the Law Court that section 4358 "was enacted to stop municipalities from discriminating against this type of affordable housing." Bangs App. Brief p. 8. As Bangs conceded, section 4358 *prohibits* municipalities from imposing limits on manufactured housing not imposed on other single family dwellings, and *limits* discrimination against mobile home parks by requiring that municipalities "set aside a reasonable amount of space for mobile home parks." Bangs App. Brief p. 9-11.

In constructing his equal protection argument, Bangs noted that in Begin v. Inhabitants of Town of Sabattus, the Law Court struck down, on equal protection grounds, an ordinance that limited the number of permits that could issue to mobile home park developers, because the justification offered - i.e., the need to slow growth - did not justify the disparate treatment between mobile home developers and other developers. Bangs App. Brief p. 13; Begin, 409 A.2d 1269, 1276 (Me. 1979). Bangs reasoned by extrapolation that the subject Ordinance applied a different standard to manufactured housing in mobile home parks than was applied to site built homes in other developments; and because no rational basis existed for the discrimination, the Ordinance was violative of the equal protection clauses of the United States and Maine Constitutions. Bangs App. Brief p. 14. Bangs asserted that the purpose and effect of the Ordinance were to limit manufactured housing

7

and mobile home parks on a discriminatory basis. Bangs App. Brief pp. 14-15.

B.    The Law Court Opinion

In reversing the Superior Court's decision that the Wells Ordinance complied with the relevant statute, the Law Court described the evolution of the Maine statutory framework regarding manufactured housing and mobile home parks. In so doing, the Law Court acknowledged the different standards applicable to manufactured housing and mobile home parks. Specifically, the Law Court noted that "[m]unicipalities must (i) allow the placement of manufactured homes on individual lots *in all areas* where other single-family homes would be allowed, 30-A M.R.S.A. § 4358(2)(E); (ii) permit new mobile [home] parks to develop and to expand *in a number of environmentally suitable locations*, 30-A M.R.S.A. § 4358(3)(M); and (iii) give *reasonable consideration* to permitting existing mobile home parks to expand in their current locations, id." Bangs, 2000 ME 186, ¶ 15, 760 A.2d at 636-37 (emphasis added). The Law Court concluded that only the third requirement mandating reasonable consideration was implicated in the Bangs decision. The Law Court's summary of the statutory framework indicates implied approval of different treatment of mobile home parks and single-family developments, in contrast to the equal treatment required for manufactured housing and other single-family homes. Bangs, 2000 ME 186, ¶ 17, 760 A.2d at 637. That is, the Law Court acknowledged that the statutory requirements allow disparate treatment of mobile home parks, and yet never called into question the validity of that statutory framework. Id. The Law Court ultimately concluded that Wells' interpretation of the statutory requirement -

8

that it was only required to reasonably consider the expansion of existing mobile home parks *within* their current locations - was not compatible with the plain meaning of the statute which requires consideration of expansion of the mobile home parks (increased dimension, not just increased density). Bangs, 2000 ME 186, ¶¶ 18-19, 760 A.2d at 637.[2] Having decided that the Wells Ordinance did not comply with state law, the Law Court declined to rule on Bangs' constitutional question. Bangs, 2000 ME 186, ¶ 21 n.11, 760 A.2d at 638 n.11.

C.    Analysis

The Legislature has demonstrated its ability to mandate equal treatment between housing types when it so desires. It did so for manufactured homes. See 30-A M.R.S.A. § 4358(2)(E). However, the Legislature has *not* mandated equal treatment of mobile home parks and other single family developments. In fact, and in contrast to the equal treatment mandated by section 4358(2)(E), the Legislature only requires that new mobile home parks be permitted to expand in a number of environmentally suitable locations and that municipalities give reasonable consideration to expansion of existing mobile home parks. 30-A M.R.S.A. § 4358(3)(M). The Law Court acknowledged, without disapproval, that what had been

---

2 As to quantification of "reasonable consideration," the Law Court was not explicit, noting only, after finding that the Wells Ordinance unambiguously prohibited the dimensional expansion of any mobile home park except in the limited areas permitting new mobile home park development, that "[a]lthough the Legislature has not defined 'reasonable consideration,' its plain meaning requires, at a minimum, more than what Wells has done. Thus, we need not determine what standards or criteria the Town must apply in order to meet the 'reasonable consideration' requirement." Bangs, 2000 ME 186, ¶ 21, 760 A.2d at 638.

afforded to mobile home parks was something less than the treatment afforded site-built housing developments. Bangs, 2000 ME 186, ¶ 5, 760 A.2d at 636-37. In sum, the statute permits disparate treatment of mobile home parks and other single family developments, and the Law Court has implicitly and, at times explicitly, approved the validity of the disparate treatment.[3] The Law Court has impliedly upheld the validity of section 4358(3)(M). In order for Bangs to have prevailed on the equal protection claim, section 4358(3)(M) would have to have been invalidated on the ground that it violated the equal protection clauses of the Maine and United States Constitutions. Accordingly, Bangs is not a prevailing party for purposes of awarding attorney's fees under 42 U.S.C. § 1988.

III.    Special Circumstances

Even if Bangs were a prevailing party, however, special circumstances exist that would justify the denial of attorney fees. Under 42 U.S.C. § 1988(b), attorney's fees will be awarded to a prevailing party unless special circumstances exist that

---

[3]    In Paladac v. City of Rockland, the Law Court determined that an ordinance violated 30 M.R.S.A. § 4965(2), not because the ordinance treated manufactured housing differently than single-family dwellings, but because there was no zone where both single-family dwellings and manufactured housing were permitted subject to the same requirements. Paladac, 558 A.2d 372, 375-76 (Me. 1989). The Law Court acknowledged, with reference to the statute's legislative history, the validity of barring manufactured housing from certain particular geographic areas (e.g. historic districts or a village area composed of older period homes). Id.
In Begin, in the context of legislation applying different building permit limits on mobile home developers and developers of other structures, the Law Court concluded the legislation must fail because the action was not rationally related to goal of slowing growth and therefore was violative of the equal protection clauses of the United States and Maine Constitutions. Begin, 409 A.2d 1269 (Me. 1979).

would render an award unjust. Blanchard, 489 U.S. at 89 n.1. "Section 1988 requires a strong showing of special circumstances to justify denying an award of attorney's fees and costs to a prevailing party in a section 1983 claim." Riddell v. National Democratic Party, 624 F.2d 539, 543-44 (5th Cir. 1980).[4]

A.    The Purpose Behind Awarding Attorney Fees to Parties Prevailing on Pendent State Law Claims

Under the Nadeau test,[5] the merits test, "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." Exeter-West Greenwich Regional School District v. Pontarelli, 788 F.2d 47, 50 (1st Cir. 1986). "[T]he merits test is met, and attorney's fees may be awarded, when a party prevails not on any part of the § 1983 claim but on a pendent, non-constitutional statutory claim if the § 1983 claim was 'substantial and . . . the successful pendent claim arose from the same nucleus of facts.'" Exeter-West, 788 F.2d at 50, quoting Lund v. Affleck, 587 F.2d 75, 77 (1st Cir. 1978). This expansive award of attorney's fees permits courts to refrain from deciding constitutional issues

---

4 The Fifth Circuit noted that "special circumstances" have not been found even where the defendants never admitted liability, there was nothing in the record to indicate the plaintiff would have prevailed on the merits, the case had not proceeded far before it became moot, and the award would have ultimately burdened the taxpayers; and that cases finding special circumstances arise in only unusual circumstances - e.g., where the suit was essentially a tort claim for private monetary damages and did not require injunctive relief or secure significant civil rights for the public. Riddell, 624 F.2d at 543-44.

5 Nadeau v. Helgemoe, 581 F.2d 275 (1st Cir. 1978).

11

where a state law issue will be determinative. Id. at 54 ("We have already noted that interpreting § 1988 to allow an award of attorney's fees in a certification case will best harmonize Pennhurst with the Pullman abstention doctrine and Congress' intent in enacting § 1988").[6] Therefore, where the plaintiff prevails on a determinative state law question, neither the state court nor a federal court is forced to decide the constitutional question in order to resolve the section 1988 claim for attorney's fees and costs.

B.    The Resistance to Federalizing Zoning Lawsuits

The First Circuit has been forthright about its reluctance to allow constitutional claims in the context of zoning cases. See Creative Environments, Inc. v. Estabrook, 680 F.2d 822, 833 (1st Cir. 1982). This reluctance is explained by noting:

> Every appeal by a disappointed developer . . . necessarily involves some claim that the [zoning] board exceeded, or abused, or "distorted" its legal authority in some manner . . . It is not enough simply to give these state law claims constitutional labels such as "due process" or "equal protection" in order to raise a substantial federal question under section 1983.

Id.; see also, Cloutier v. Town of Epping, 714 F.2d 1184, 1190 (1st Cir. 1983) ("[P]laintiffs' long list of harassing actions reveals not the type of egregious behavior that might violate the due process clause, but rather, for the most part, further disputes over the interpretation of the state and town zoning laws"); Chongris v.

---

6 Pennhurst stands for the proposition that the Eleventh Amendment bars federal courts from deciding pendent state law claims against state officials that impact directly against the state.

12

Board of Appeals of the Town of Andover, 811 F.2d 36, 46 (1st Cir. 1987) ("The Civil Rights Act cannot be used as a rack upon which every disappointed developer can stretch a community that fails to roll out the red carpet for him"). The First Circuit has left the door open for constitutional claims grounded in zoning disputes under circumstance in which there is gross abuse of power, a fundamental procedural irregularity, racial animus, or the like. Id. at 833.

The reluctance to federalize zoning cases is applicable in the equal protection context, as well. See e.g., Collins v. Nuzzo, 244 F.3d 246, 251 (1st Cir. 2001) (in the context of a permit application); Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32 (1st Cir. 1992) (in the context of local permitting decisions). In Macone v. Town of Wakefield, the First Circuit ultimately affirmed a grant of summary judgment rejecting equal protection claims in the context of a permit application where there was not a blanket ordinance ruling against a certain type of housing and where other low income housing projects were going forward in Wakefield. Macone, 277 F.3d 1, 10 (1st Cir. 2002). Here, even under the Ordinance that was struck down by the Law Court, mobile home parks were not completely precluded from the Town of Wells. In addition, Bangs has not asserted facts sufficient to establish a gross abuse of power, fundamental procedural irregularity, or racial animus. See Cloutier, 714 F.2d at 1190 ("[D]efendants' action taken to enforce their interpretations of the governing laws cannot be seen as a gross abuse of power"). Therefore, the justification for federalizing a zoning dispute is not present in this case.

C.    Analysis

In general cases under section 1983, the justification for allowing an award of attorney's fees even where the claimant prevails on state law, rather than federal grounds, is clear - the longstanding reluctance by courts to unnecessarily decide constitutional issues.  In the context of zoning cases, however, this reluctance is opposed by the equally important desire not to federalize zoning law.  And so this case brings the court to a dilemma - which principle is better served?  Unfortunately, in a constitutional case grounded in a zoning dispute, even raising the abstention doctrine as the primary principle is self-defeating - i.e., if the court awards attorney's fees because the claimant has prevailed on the pendent state law claims, this will encourage those bringing zoning cases to include a constitutional claim, and as a result, the courts will be forced to decide constitutional claims in order to divorce zoning cases from the Civil Rights Act.

Here, the final judicial ruling on Bangs' equal protection claims is the Superior Court's denial of those claims.  The Law Court declined to rule on the equal protection claims, but impliedly upheld a statute that permits the disparate treatment of mobile home parks.  In addition, Bangs has not established any rationale that would convince the court to federalize this zoning dispute.  Accordingly, the court concludes that even were Bangs to be considered a "prevailing party" for purposes of an award of attorney's fees under section 1988, special circumstances exist that warrant the denial of those fees.

14

The entry is

Plaintiffs' application for attorney's fees is DENIED.


Dated at Portland, Maine this 25th day of March 2002.


Robert E. Crowley
Justice, Superior Court

Helen L. Edmonds, Esq. - PLS
Matthew D. Manahan, Esq. - PLS
Christian L. Barner, Esq. - DEF

STATE OF MAINE
YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-98-056
REC -YOR-5 /3/2004

NORMAN BANGS, et al,

Plaintiffs

v.

**ORDER ON AMENDED PETITION FOR ATTORNEY'S FEES**

THE INHABITANTS OF THE TOWN OF
WELLS, MAINE, et al,

Defendants

DONALD L
LAW

MAY 21 2004

Plaintiffs Norman Bangs and Blueberry Ridge Mobile Village, Inc. seek an award of attorney fees and expenses totaling $133,055.83. The plaintiffs' entitlement to attorney fees was established by the Law Court in Bangs v. Town of Wells, 2003 ME 129, 834 A.2d 955, 961 ("Bangs II").

The Law Court ruled that plaintiffs are entitled to an award of attorney fees and expenses based on its determination that the plaintiffs were prevailing parties under The Civil Rights Attorney's Fees Award Act, 42 U.S.C. §1988.

Any award of attorney fees must be reasonable in light of all of the relevant factors. The most important factor in determining the amount of a fee award, is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," the so called "lodestar factor". Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). In Blanchard v. Bergeron, 489 U.S. 87 (1989), the United State Supreme Court held that the starting point of the reasonable hourly rate multiplied by the hours reasonably expended may be adjusted by the factors articulated in Johnson v. Georgia Hwy. Exp. Inc., 488 F.2d 714, 717-719 (5th Cir. 1974).

Those factors are:

1. The time and labor required;
2. the novelty and difficulty of the question presented;
3. the skill required to perform the legal services;
4. the preclusion of other employment due to the acceptance of the case;
5. the customary fee in the community;
6. whether the fee is fixed or contingent;
7. the time limitations imposed by the client or the circumstances;
8. the amount involved and the results obtained;
9. the expertise, reputation and ability of the attorneys;
10. the undesirability of the case;
11. the nature and length of the professional relationship with the client; and
12. awards in similar cases.

These factors are familiar in Maine practice and have been in use here for at least twenty years. Poussard v. Commercial Credit Plan, 479 A.2d 881 (Me. 1984)

Many of these factors support a substantial award. As the Hensley court pointed out "many of [the Johnson] factors are subsumed within the initial calculation of hours reasonably expended at a reasonable rate." Hensley, 461 U.S. at 434. In this case it appears that the time and labor required (factor 1), the novelty and difficulty of the question presented (factor 2), the customary fee in the community (factor 5), and the expertise, reputation and ability of the attorneys (factor 9) have been accounted for in whole or in part in the "lodestar factor".

There is considerable dispute whether the time and labor expended were required. It is undisputed that six different lawyers worked on this case and that the initial primary plaintiffs' attorney who tried the case for four days left the firm in 2001.

There is nothing in the documents submitted in support of the attorney fee claim that justifies a finding that the work in this case precluded other employment for plaintiffs' lawyers (factor 4); that the case was undesirable (factor 10); that there were

2

time limitations imposed by the client or the circumstances (factor 7); or that the fee was contingent in any way (factor 6).

In light of these factors the court determines that an award of 85% of the fees that are temporally related to the §1983 claim is reasonable.

The invoices of September 11, 1998 ($1,225.60), October 7, 1998 ($111.75), November 12, 1998 ($1,477.60), December 7, 1998 ($1,441.19), January 13, 1999 ($3,716.00), February 10, 1999 ($6,485.62) and one-half of the March 8, 1999 ($8,473,22) predate the filing of the motion to amend the complaint to add the civil rights claim whichgive rise to the fee award. Accordingly, $18,694.37 of the claimed fees and expenses is disallowed. Of the remaining claim of $114,361.46 the court allows 85% of the claimed amount.

Therefore plaintiffs are allowed fees and expenses in the amount of $97,207.24.

Dated: May 12, 2004

Robert E. Crowley
Justice, Superior Court

PLAINTIFF:
BRIAN RAYBACK ESQ
PIERCE ATWOOD
ONE MONUMENT SQ
PORTLAND ME   04101-1110


DEFENDANT
SUSAN B DRISCOLL ESQ
BERGEN & PARKINSON
62 PORTLAND RD
KENNEBUNK ME   04043-6658