**Ann M. CASTELLI et al**

v.

**Donald L. CARCIERI et al.**

**No. 2008–196–Appeal.**

Supreme Court of Rhode Island.

Dec. 17, 2008.

Carly B. Iafrate, for Plaintiff.

Daniel W. Majcher, George H. Rinaldi, Providence, for Defendant.

Present: WILLIAMS, C.J., FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

This matter comes to us on the appeal of five sheriffs, Chief Deputy Sheriff James

M. Grant, Chief Deputy Sheriff Daniel E. Silva, Chief Deputy Sheriff Jo–Ann J. Macari, Sheriff Joseph K. Ford,[1] and Sheriff Ann M. Castelli (collectively plaintiffs). The plaintiffs contend that their layoffs (or, in Castelli's case, her potential layoff) were improper. The trial justice ruled in favor of the defendants, Rhode Island Governor Donald L. Carcieri and director of the Department of Administration, Jerome F. Williams [2] (collectively defendants), concluding that the governor had the inherent authority to terminate the plaintiffs' employment and further that the state's economic distress constituted just cause under the controlling statute, G.L.1956 § 42–29–1. The plaintiffs timely appealed to this Court. We reverse the judgment of the Superior Court.

# I

## Facts and Travel

The material facts are undisputed. Faced with a severe fiscal crisis and a significant budget deficit, Governor Carcieri instructed the heads of the executive departments to eliminate 1,000 jobs through "attrition, restructuring, subcontracting, and/or the layoff of state employees."[3] To comply with the governor's directive, approximately 145 state employees were laid off by way of layoff notices sent on November 15, 2007. Approximately 400 additional state employees received notices informing them that their positions might be eliminated.

In accordance with the governor's order, the Division of Sheriffs, a division within the Department of Administration (DOA),

reviewed all of its positions, seeking to eliminate any employees that the Division believed it could afford to remove. The positions of five sheriffs, Chief Deputy Sheriff Grant, Chief Deputy Sheriff Silva, Chief Deputy Sheriff Macari, Sheriff Ford, and Sheriff Castelli, specifically were reviewed. The plaintiffs' positions were unclassified positions, each carrying a statutory ten-year term; the director of the DOA, with the consent of then Governor Lincoln Almond, had appointed plaintiffs, pursuant to § 42–29–1, on December 2, 2001.

On November 15, 2007, Beverly E. Najarian, then director of the DOA, sent letters to Sheriffs Grant and Silva, informing them that they were being placed on layoff status from their positions as Chief Deputy Sheriff "due to the severe financial crisis" affecting the State of Rhode Island. Najarian informed Grant and Silva that the layoff would be effective starting November 30, 2007. These letters gave no indication that either Grant or Silva would be retained elsewhere in state service.

That same day, Najarian sent letters to Sheriffs Macari and Ford, which explained that because of a "shortage of funds" in the state budget, the state intended to eliminate their positions. These letters indicated that because Macari and Ford had achieved statutory tenure, the state would place them in a similar position. Approximately two months later, on January 8, 2008, Najarian sent a second letter to both Macari and Ford, explaining that the previous letter erroneously had indicated that the state would place them in a similar position. This new letter cited G.L.1956

---

1. Sheriff Joseph K. Ford has retired.

2. In March 2008, Jerome F. Williams became the new director of the Department of Administration. Williams was substituted as a defendant for the previous director, Beverly E. Najarian.

3. When litigation in this case commenced, the estimated budget deficit was approximately $150 million. The budget deficit for the fiscal year at the time of the Superior Court decision was between $400 and $450 million.

§ 36–4–59(a)(2)(iii) (the provision concerning tenure in state service), which provides that state employees "whose method of appointment and salary and term of office is specified by statute" did not qualify for tenure. Accordingly, Najarian informed Macari and Ford that they were not eligible to be retained in a similar position and that instead they were being placed on layoff status.

Castelli also received a letter from Najarian, on November 15, 2007, explaining that, because of a severe shortage of funds, Castelli might not retain her position. The letter did not affirmatively lay off Castelli or eliminate her position.

Both parties agree that the layoffs of Grant, Silva, Macari, and Ford are for an indefinite period; in addition, there is agreement that they will be placed on the reemployment list. The parties also agree that the positions held by Grant, Silva, Macari, and Ford would not be filled by other people. Although Castelli did not receive a layoff notice, but instead received a notice of a possible layoff, the parties agreed that if she were laid off, the layoff would be for an indefinite period, that she would be placed on the reemployment list, and that her position would not be filled by another person.

On November 28, 2007, shortly after they had received the letters of November 15, 2007, plaintiffs filed a complaint in the Superior Court, naming Governor Carcieri and Najarian as defendants. The plaintiffs sought the following relief: (1) a writ of mandamus directing defendants to maintain plaintiffs in their respective positions until just cause for their removal was demonstrated; (2) a declaratory judgment declaring that only the General Assembly could eliminate their positions or change

their terms of office; and (3) a temporary restraining order and mandatory injunctive relief directing defendants to maintain plaintiffs in their respective positions until completion of their term.

Because Grant and Silva were the only plaintiffs who had received a definite layoff date (November 30, 2007), they filed for a temporary restraining order in which they requested to maintain their positions pending a decision on the merits of their complaint. On November 30, 2007, defendants agreed to delay the layoffs, pending a decision on Grant and Silva's request for a temporary restraining order. On December 7, 2007, the request for a preliminary injunction was consolidated with the trial on the merits, and defendants again agreed to delay the layoffs pending resolution of the case.[4]

The plaintiffs argued that the governor did not have the power to take away their statutory positions, which they had acquired by appointment for a ten-year term, subject only to removal for just cause. They further contended that the financial reasons that were cited as the reason for the layoffs did not constitute the type of "just cause" that is referred to in § 42–29–1. Additionally, plaintiffs maintained that a lay off for an indefinite term amounted to an unconstitutional deprivation of their property rights. The defendants responded that the governor has the inherent power to lay off sheriffs for economic reasons and, alternatively, that the layoff was proper under the terms of the statute because a budgetary crisis constituted just cause.

Upon hearing the arguments of both parties, the trial justice, in a written decision, agreed with defendants. She de-

---

4. We commend defendants for the humane manner in which they have treated plaintiffs during the course of this litigation.

clared that the governor "has the inherent power, derived from the Rhode Island Constitution and state statutes, to lay off the Sheriffs for fiscal reasons, notwithstanding their appointment to ten year terms, from which they may be removed for cause, under § 42–29–1." The trial justice also provided alternate grounds for her ruling: the budget crisis constituted a statutorily authorized just cause for the layoffs and, as such, plaintiffs' due process rights were not violated. The trial justice also noted that the proposed layoffs were not tantamount to an elimination of plaintiffs' positions because plaintiffs may return to their positions if there is no longer a fiscal reason for them to remain on layoff status. The trial justice declined to address whether defendants had the power to abolish or eliminate plaintiffs' positions through reorganization or subcontracting because such action had not yet been taken.

The trial justice entered final judgment on all counts, and she made the following declarations: (1) the governor has the inherent power to layoff plaintiffs for fiscal reasons; (2) plaintiffs may be placed on layoff status; (3) the layoffs are for an indefinite period; and (4) the layoffs do not constitute abolishing of their offices nor are they tantamount to abolishing the positions. The plaintiffs timely appealed.

## II

### Analysis

On appeal, plaintiffs contend that the trial justice erred in deciding that the governor had the inherent authority to lay off plaintiffs in light of a financially distressed economy. The plaintiffs maintain that the trial justice should have respected the clear statutory language governing their terms of employment and allowed them to complete their ten-year statutory term. The plaintiffs further allege that a budget-

ary crisis does not constitute just cause for their layoffs and that the trial justice thus erred when she ruled to that effect.

### A

#### Standard of Review

When reviewing an appeal based on an alleged error of law, this Court employs a *de novo* review to determine whether the trial justice committed legal error. *See Children's Friend & Service v. St. Paul Fire & Marine Insurance Co.*, 893 A.2d 222, 229 (R.I.2006) ("As the question before us concerns an alleged error of law, our review is *de novo.*"); *Carnevale v. Dupee*, 783 A.2d 404, 408 (R.I.2001) ("Questions of law, * * * including questions of statutory interpretation, are reviewed *de novo* by this Court."). "We conduct a *de novo* review * * * because 'this Court is in the best position to decide the merits of a given question of law.'" *Fleet National Bank v. Hunt*, 944 A.2d 846, 851 (R.I.2008) (quoting *Lett v. Providence Journal Co.*, 798 A.2d 355, 363 (R.I.2002)).

### B

#### G.L.1956 § 42–29–1

The plaintiffs contend that § 42–29–1, which governs the appointment and removal of all sheriffs, bestowed upon them a constitutionally protected property interest in continued employment for the duration of a ten-year term of employment, subject to removal only for just cause. Section 42–29–1 provides:

"(a) The director of the department of administration shall appoint with the consent of the governor an administrator to a ten (10) year term to be in charge of the division of sheriffs within the department of administration. The director of the department of administration shall also appoint with the con-

sent of the governor an executive high sheriff to a ten (10) year term to assist the administrator. The director of the department of administration shall also appoint to each of the counties with the consent of the governor the sheriffs and the chief deputy sheriffs to ten (10) year terms. The director of the department of administration shall appoint deputy sheriffs and other necessary classifications, subject to the appropriations process. Sheriffs, chief deputy sheriffs and deputy sheriffs shall be subject to the supervision of the administrator who may assign tasks and functions in order to ensure the proper management of the sheriffs division. Any deputy sheriff hired after July 1, 2001 must successfully complete the sheriff academy and any courses deemed necessary at the municipal police training academy prior to assuming the duties of a deputy sheriff. Furthermore, the administrator in conjunction with the personnel administrator shall be responsible for promulgating written class specifications with necessary minimum qualifications defined in them. The sheriffs of the several counties and the deputy high sheriff for Providence county who are in office as of February 1, 2001 shall continue to hold office until their present term expires.

"(b) The administrator, assisted by the executive high sheriff, the sheriffs, the chief deputy sheriffs, and the deputy sheriffs shall perform all the duties required and exercise all the powers prescribed in this chapter; chapter 15 of title 5; chapters 5 and 10 of title 9; chapters 5, 10 and 14 of title 10; chapters 8, 31, 34, 36 and 44 of title 11; chapters 4, 5 and 6 of title 12; chapter 22 of title 17; chapters 4 and 6 of title 22; chapter 2 of title 28; chapter 6 of title 35; chapter 8 of title 37; and all other provisions of the general laws and public laws insofar as those powers and

duties relate to the sheriffs of the several counties and as required and prescribed in all other provisions of the general laws and public laws relating to the powers and duties of the sheriffs of the several counties. Sheriffs and deputies can be removed for just cause by their appointing authority.

"(c) All resources of the sheriffs and of the several counties shall be transferred to the division of sheriffs within the department of administration. These resources include, but are not limited to, all positions, property, accounts and other funding pertinent to sheriffs."

For the purpose of this opinion, we shall reiterate the pertinent part of the statute. The provision governing the appointment of plaintiffs states: "The director of the department of administration shall also appoint to each of the counties with the consent of the governor the sheriffs and the chief deputy sheriffs to ten (10) year terms." Section 42–29–1(a). Subsection (b) governs removal of the sheriffs and provides that "[s]heriffs and deputies can be removed for just cause by their appointing authority." Section 42–29–1(b). This sentence is the only sentence in the statute that refers to removal of the sheriffs.

■ "It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1226 (R.I. 1996). *See also State v. Greenberg,* 951 A.2d 481, 489 (R.I.2008). Thus, when we examine an unambiguous statute, "there is no room for statutory construction and we must apply the statute as written." *In re Denisewich,* 643 A.2d 1194, 1197 (R.I.1994) (citing *Exeter–West Greenwich Regional*

*School District v. Pontarelli,* 460 A.2d 934, 936 (R.I.1983)).

■■ Only when the statute is ambiguous and susceptible to more than one interpretation does this Court have the responsibility to "glean the intent and purpose of the Legislature 'from a consideration of the entire statute, keeping in mind [the] nature, object, language and arrangement' of the provisions to be construed * * *." *In re Advisory Opinion to the Governor,* 668 A.2d 1246, 1248 (R.I.1996) (quoting *Algiere v. Fox,* 122 R.I. 55, 58, 404 A.2d 72, 74 (1979)). "[O]ur interpretation of an ambiguous statute 'is grounded in policy considerations and we will not apply a statute in a manner that will defeat its underlying purpose.'" *Town of Burrillville v. Pascoag Apartment Associates, LLC,* 950 A.2d 435, 446 (R.I.2008) (quoting *Arnold v. Rhode Island Department of Labor and Training Board of Review,* 822 A.2d 164, 169 (R.I.2003)).

### 1

### Plaintiffs' Appointments

When plaintiffs were appointed to their offices, they were appointed under the current version of § 42–29–1, which provides that "[t]he director of the department of administration shall also appoint to each of the counties with the consent of the governor the sheriffs and the chief deputy sheriffs to ten (10) year terms." Section 42–29–1(a). Thus, by its terms, the statute creates a ten-year term for county sheriffs and chief deputy sheriffs. The applicable language creating this ten-year term is clear and unambiguous, and we conclude that the General Assembly intended a fixed ten-year term for all county sheriffs and chief deputy sheriffs.

The trial justice, however, found a distinction between sheriffs appointed on or before February 1, 2001, and sheriffs appointed after that date. Focusing on the last sentence of § 42–29–1(a), which reads, "[t]he sheriffs of the several counties and the deputy high sheriff for Providence county who are in office as of February 1, 2001 shall continue to hold office until their present term expires," the trial justice concluded that this provision created two groups of sheriffs: those appointed on or before February 1, 2001, and those appointed after February 1, 2001. She explained that the statute required that those sheriffs appointed on or before February 1, 2001, were to hold office until their term expired; but she did not believe that there was any such mandate with respect to those sheriffs appointed after February 1, 2001. The trial justice concluded that sheriffs appointed after February 1, 2001, such as plaintiffs, were not afforded such protection and hence were not guaranteed the right to hold office until their term expired (subject to removal only for just cause). We disagree.

Because the trial justice attributed a different meaning to the statute, we will take our analysis one step further. To fully understand § 42–29–1, we first must look at the history of the Division of Sheriffs and of this particular statute. Before July 2001, there were two classifications, sheriffs and marshals; each "were represented by separate unions, had disparate work schedules, pay scales, and received different training as appropriate to their separate responsibilities." *State (Department of Administration) v. Rhode Island Council 94, A.F.S.C.M.E., AFL–CIO, Local 2409,* 925 A.2d 939, 941 (R.I.2007) (*Council 94* ). In July 2001, the General Assembly enacted G.L.1956 § 42–11–21 (P.L.2001, ch. 77, art. 29, § 2), otherwise known as the "merger statute," establishing the Division of Sheriffs, a body vested with the powers and duties previously per-

formed by the sheriffs and marshals separately. *Council 94*, 925 A.2d at 940–41.

At the same time, the General Assembly amended § 42–29–1 to bring the sheriff's division under the control of the DOA. This amendment vested the appointment authority with respect to the sheriffs in the director of the DOA, subject to the consent of the governor. The other significant change to § 42–29–1 was the addition of the language requiring that "[t]he sheriffs of the several counties and the deputy high sheriff for Providence county who are in office *as of February 1, 2001* shall continue to hold office until their present term expires." Section 42–29–1, as amended by P.L.2001, ch. 77, art. 29, § 3 (emphasis added). The significance of this addition, however, is minimal.

The trial justice concluded that the February 1, 2001 language created a distinction between sheriffs appointed on or before February 1, 2001, and sheriffs appointed after February 1, 2001. However, this language was added in a 2001 amendment to § 42–29–1. In February 2001, the General Assembly was in the process of approving and adopting the merger statute. At this time it appears that the legislators believed that there was the possibility of potential confusion about the term of office for the sheriffs who already had been appointed before the merger of the sheriffs and marshals. Seeking to address the concern that the sheriffs appointed before the merger might be dismissed as part of the merger, the General Assembly added additional protective language to ensure that those previously appointed sheriffs would retain their positions for their full terms. Thus, it is apparent to us that, based on the inclusion of the February 1, 2001 date in § 42–29–1, the General Assembly simply was protecting the positions of those sheriffs appointed on or before February 1, 2001, in the same way that the sheriffs appointed after the 2001 amendment to § 42–29–1 were protected by the language vesting them with a ten-year appointment. The February 1, 2001 language did not operate to provide sheriffs appointed on or before that date with increased, or different, job security.

Furthermore, we have held that we must apply a statute in a manner that "will [not] defeat its underlying purpose." *Town of Burrillville*, 950 A.2d at 446. Certainly, the General Assembly intended to provide the sheriffs appointed after February 1, 2001, with a ten-year term of employment, subject to removal for just cause. This language, appointing sheriffs to a ten-year term, is used throughout the current version of § 42–29–1 and has been the designated length of a sheriff's term of office since this statute first was substantially amended in 1978.[5]

Thus, in our opinion, the trial justice's interpretation of the appointment provision, § 42–29–1(a), was incorrect. All sheriffs, those appointed on, before, or after February 1, 2001, fall under § 42–29–1(a)'s mandate that the sheriffs serve a statutorily determined term.

### 2

### Appointment for a Ten–Year Term

The defendants contend that, despite the statutory ten-year term to which plaintiffs were appointed, it was proper for the director of the DOA to place plaintiffs on layoff status, before they completed their terms. The plaintiffs, however, maintain that they were appointed to a ten-year

---

5. General Laws 1956 § 42–29–1 first was enacted by the General Assembly in 1939. It was reenacted in substantially the same format in 1956. The statute next was amended in 1978, with significant changes.

term and that the clear, unambiguous statutory mandate in § 42–29–1 requires that they serve until the completion of their ten-year terms, subject to removal only for just cause.

Our rules of statutory construction "require no citation of authorities." *Carlson v. McLyman,* 77 R.I. 177, 180, 74 A.2d 853, 855 (1950). Rather, these rules are intuitive, centering on the premise that statutory language that is clear and unambiguous will be given its plain and ordinary meaning. *See Accent Store Design, Inc.,* 674 A.2d at 1226. We "cannot arbitrarily extend the ordinary meaning of [statutory] language." *Carlson,* 77 R.I. at 180, 74 A.2d at 855. Indeed, "[i]t is not within the province of this [C]ourt to insert or delete words from a statute unless the necessity to do so is plainly evident in order to carry out the legislative intent." *Id. See State v. Santos,* 870 A.2d 1029, 1032 (R.I.2005) ("[T]his Court will not broaden statutory provisions by judicial interpretation unless such interpretation is necessary and appropriate in carrying out the clear intent or defining the terms of the statute.") (quoting *Simeone v. Charron,* 762 A.2d 442, 448–49 (R.I.2000)); *see also State v. Menard,* 888 A.2d 57, 60 (R.I.2005); *State v. Bryant,* 670 A.2d 776, 779 (R.I.1996).

Here, the salient part of the statute at issue provides: "The director of the department of administration shall also appoint to each of the counties with the consent of the governor the sheriffs and the chief deputy sheriffs *to ten (10) year terms.*" Section 42–29–1(a) (emphasis added). It is clear that plaintiffs were all appointed pursuant to § 42–29–1(a) and all received ten-year terms. There is no ambiguity in the use of the phrase "ten-year term." To probe further into the meaning of the phrase "ten-year term" would be to violate our tenets of statutory construction. Read literally, we conclude that no other

meaning can be given to the phrase "ten-year term" and that this statutory provision requires that plaintiffs be allowed to serve a ten-year term.

There exists no clearer language for the General Assembly to convey the mandatory nature of the ten-year term. Turning to the first clause of the applicable statute, the General Assembly used the word "shall" when requiring the director of the DOA to appoint the sheriffs to ten-year terms. We have held that the use of the word "shall" contemplates something mandatory or the "imposition of a duty." *Conrad v. State of Rhode Island—Medical Center—General Hospital,* 592 A.2d 858, 860 (R.I.1991) (quoting *Brown v. Amaral,* 460 A.2d 7, 10 (R.I.1983)). The use of the word "shall" is readily distinguishable from the use of the word "may," which implies an allowance of discretion. Indeed, Black's Law Dictionary defines the word "shall" in a manner consistent with our prior decisions: "[S]hall. * * * Has a duty to; more broadly, is required to." Black's Law Dictionary 1407 (8th ed.2004). In a note immediately following this definition, the editors explain that "[t]his is the mandatory sense that drafters typically intend and that courts typically uphold." *Id.* Thus, we hold that § 42–29–1(a) *requires* the director of the DOA to appoint plaintiffs to ten-year terms of employment.

The General Assembly could have given the sheriffs an indefinite term of employment or vested them with tenure in their positions; instead, it provided the sheriffs with a specific term of ten years, protecting them in their employment for that particular length of time. We have held that "[w]hen the duration of a term of an office and the time of its commencement or termination is fixed by statute or constitution, a person elected or appointed to fill a vacancy in such office holds it for the unexpired portion of the term and until the

qualification of a successor." *Andersen v. Sundlun,* 625 A.2d 213, 215 (R.I.1993).

We also have recognized that only the General Assembly can choose to create rights to protect people in their employment. *See Pacheco v. Raytheon Co.,* 623 A.2d 464, 465 (R.I.1993) ("It is not the role of the courts to create rights for persons whom the Legislature has not chosen to protect."). It is not the proper role of the judiciary to bestow rights or to take them away. *See generally State v. Lead Industries Association, Inc.,* 951 A.2d 428, 436 (R.I.2008); *DeSantis v. Prelle,* 891 A.2d 873, 881 (R.I.2006). The General Assembly conferred each plaintiff with a ten-year term of employment. It is our duty to determine the rights of the respective parties in this case in a manner consistent with the intent of the General Assembly as expressed in the language of the statute.

### 3

### Removal for Just Cause

The plaintiffs' ten-year terms were subject to a single removal provision: "[s]heriffs and deputies can be removed for just cause by their appointing authority." Section 42–29–1(b). Although it is clear that the General Assembly requires that all sheriffs under § 42–29–1 hold their terms for ten years, removable only for "just cause," the statute does not define "just cause." Thus, to properly construe this statute, this Court must determine, in the context of legislative intent, what constitutes "just cause" for removal.

The plaintiffs interpret the just-cause requirement as permitting a dismissal only for disciplinary reasons. The defendants, on the other hand, maintain that the term "just cause" encompasses both disciplinary reasons and fiscal reasons.

■ This Court has not had the opportunity to determine whether a fiscal crisis constitutes just cause for a layoff for an indefinite period of time. Some of our sister states have, however, been confronted with this question and have determined that the concept of just cause indeed does include fiscal reasons. *See Debnam v. Town of Belmont,* 388 Mass. 632, 447 N.E.2d 1237, 1239 (1983) (declaring that "either lack of work or lack of money is a 'just cause' for layoff"); *G & M Employment Service, Inc. v. Commonwealth,* 358 Mass. 430, 265 N.E.2d 476, 480 (1970) ("The standard of 'just cause,' * * * would require determination * * * whether there existed (1) a reasonable basis for employer dissatisfaction with a new employee, entertained in good faith, for reasons such as lack of capacity or diligence, failure to conform to usual standards of conduct, or other culpable or inappropriate behavior, or (2) grounds for discharge reasonably related, in the employer's honest judgment, *to the needs of his business.*") (emphasis added); *Dooling v. Fire Commissioner of Malden,* 309 Mass. 156, 34 N.E.2d 635, 638 (1941) (holding that "[o]bviously reasons of economy constitute just cause [for abolishing the plaintiff's position] within the meaning of [the applicable statute]"); *Commissioner of Health and Hospitals of Boston v. Civil Service Commission,* 23 Mass.App.Ct. 410, 502 N.E.2d 956, 958 (1987) ("Lack of money is just cause for a layoff."); *Uintah Basin Medical Center v. Hardy,* 110 P.3d 168, 174 (Utah Ct.App.2005) (explaining that the definition of "good cause" is sufficiently broad to allow an "employer to discharge an employee not only for misconduct or poor performance but also for other legitimate economic reasons"); *Taylor v. National Life Insurance Co.,* 161 Vt. 457, 652 A.2d 466, 472 (1993) ("Without exception, courts that have considered [whether economic circumstances constitute just cause to terminate employees] have held that economic circumstances that necessitate

employer layoffs constitute good cause for termination.").

However, we need not, at this juncture, determine whether a fiscal crisis may constitute just cause for terminating an employee because we are faced with employees who have been hired for a statutory term of years. We are mindful that, although a fixed term does not create a contractual relationship between plaintiffs and the state, it clearly provides plaintiffs with an expectation of continued employment during the period of the fixed term— an expectation which, in our opinion, cannot be defeated by an appointing authority who seeks to impose a layoff for economic reasons. We hold, therefore, that in the context of removal for just cause of people who hold office under § 42–29–1, economic distress cannot be the basis because there is a fixed statutory term of employment. Just cause, as that term is used in this statute, must be understood as relating to personal deficiencies in the officeholder, such as shortcomings in job performance, inappropriate activities, conduct worthy of discipline, and other similar usually punishable activities on the part of the employee as an individual.

Had the General Assembly intended to allow plaintiffs to be dismissed for fiscal reasons, it would have provided for such layoffs explicitly. According to G.L.1956 § 36–4–2, plaintiffs are *unclassified* employees: "The classified service shall comprise all positions in the state service * * * except the following specific positions which * * * shall constitute the unclassified service: * * * (13) Administrator, executive high sheriff, sheriffs, chief deputy sheriffs, deputy sheriffs, and other employees of the sheriff's division * * *." With respect to the *classified* employees, the General Assembly specifically has pro-

vided that "[a]n appointing authority may lay off a classified employee whenever he or she deems it necessary because of a * * * shortage or *stoppage of work funds.*" Section 36–4–37 (emphasis added). Significantly, the General Assembly did not provide for layoffs of unclassified employees (such as plaintiffs) because of a "stoppage of funds." The General Assembly knew how to craft language to allow some state employees to be removed for fiscal reasons, but it chose not to vest the director of the DOA with that authority with respect to employees in plaintiffs' position. Just cause, as used in § 42–29–1 does not, therefore, refer to the fiscal distress of the employer.

Accordingly, we conclude that the governor is without the power to divest these employees of their statutorily protected ten-year term of employment in the absence of just cause (as we have construed that term with respect to the statute at issue).[6]

### Conclusion

For the reasons set forth in this opinion, we reverse the judgment of the Superior Court. The papers in this case may be remanded to the Superior Court.

Justice GOLDBERG did not participate.

---

**6.** Although we reverse the judgment of the trial justice, we pause to commend her for her

scholarly efforts as she grappled with the difficult issues presented by this case.