**CITY OF PROVIDENCE**

v.

**ESTATE OF Stephen A. TARRO et al.**

**No. 2008–91–Appeal.**

Supreme Court of Rhode Island.

July 2, 2009.

Deming E. Sherman, Esq., Providence, for Plaintiff.

Thomas A. Tarro, III, Esq., Michael A. St. Pierre, Esq., Warwick; James P. Howe, Esq., Providence, for Defendant.

Present: GOLDBERG, Acting C.J., FLAHERTY, SUTTELL, JJ., and WILLIAMS, C.J. (Ret.).

## OPINION

Justice SUTTELL, for the Court.

The plaintiff, City of Providence (city), appeals from a Superior Court judgment granting a writ of mandamus compelling the city's building official to issue a demolition permit to the defendants, Estate of Stephen A. Tarro, Richard M. Tarro, Michael A. Tarro, and Patricia A. Tarro (defendants or the Tarros).[1] The trial justice ordered the building official to issue a demolition permit to the defendant owners of the former Grove Street School after he concluded that the structure was a public safety hazard. The city contends that mandamus was not appropriate in this case because the defendants failed to establish any one of the three criteria necessary for such a writ to be issued. For the reasons set forth in this opinion, we quash the writ of mandamus.

---

1. The city's complaint also named Bilray Demolition Co., Inc. (Bilray) as a defendant. The judgment entered by the Superior Court did not implicate Bilray, however, except to the extent that it denied "all other claims of the Plaintiff and Defendants * * * [other than] the cross-claims by and among the Defendants."

## I

### Facts and Procedural History

In 1983, Richard E. Tarro purchased from the city the property located at 95 Grove Street (Grove Street School) in Providence, Rhode Island. Before the execution of the sale, Mr. Tarro indicated that he intended to demolish the building to create additional parking for the neighborhood, as well as to allow an adjacent funeral home to expand. Whatever understanding existed between Mr. Tarro and the city regarding the demolition of the Grove Street School was never reduced to a written agreement, however. The building remained vacant throughout the succeeding years. Richard E. Tarro died in 2001, and on June 4, 2004, his executor conveyed the property to Mr. Tarro's four surviving children. In 2002, the Providence City Council created the Industrial and Commercial Buildings District to protect many of the city's historically significant buildings, including the Grove Street School. City of Providence Zoning Ordinance § 501–501.14.4. The express purpose of this district is to provide for review by the Historic District Commission (HDC) "over proposals to demolish or otherwise alter the exteriors of specific historically significant buildings in the City." *Id.* at 501.14. The ordinance also requires a property owner seeking to demolish such a building to obtain a "Certificate of Appropriateness" from the HDC. *Id.* at 501.4, 501.8 and 501.14.2. The city's demolition permit application form reflected this change by requiring an applicant to include HDC approval as part of his or her submission.

In 2004, Bilray Demolition Co., Inc. (Bilray) applied for a demolition permit, apparently at the behest of the Tarro siblings. Edgar Paxson, the building official at the time, did not issue a permit because Bilray had failed to include a certificate of appropriateness from the HDC. Instead of seeking the certificate from the HDC, the Tarros hired an attorney to secure the permit. This attorney obtained a letter from the city's assistant solicitor that authorized the building official "to approve the demolition of any or all structures present" on the Grove Street School property but also indicated, "[s]aid approval and demolition shall be carried out in accordance with the State Building Code." Mr. Paxson informed the Tarros' attorney, however, that the letter was not sufficient for him to issue a demolition permit without a certificate of appropriateness. For reasons that are unclear, neither Bilray nor the Tarros pursued the matter any further at that time.

In late January 2007, William Bombard, the acting director of the city's Department of Inspections and Standards, received an anonymous report that unknown parties had begun "salvage operations" in preparation for the demolition of the Grove Street School. In response, he went to the site to investigate, after which he requested that the city building department post a stop-work order on the front entrance of the building. On Friday afternoon, February 2, 2007, Bilray filed a second demolition-permit application, again without including a certificate of appropriateness. Without waiting for the building official to process its application, Bilray began demolition work on the Grove Street School on the following morning.[2] By the time city officials arrived on the scene, Bilray had demolished approximately thirty feet of the building's easterly wall and twenty-five

---

**2.** In its brief, Bilray asserts that it "was an unwitting dupe in an apparent misrepresentation by Stephen Tarro," alleging that Mr. Tarro presented to it a certificate of appropriateness. It is uncontroverted that the HDC never issued a certificate.

feet of its southerly side, amounting to around 10 percent of the structure. Additionally, the stop-work order on the front of the building was missing. The building official ordered Bilray to demolish a portion of the structure that was in an unsafe condition because of the partial demolition and then ordered all further demolition halted.

The city brought an action in Superior Court seeking to enjoin further demolition, to fine the Tarros and Bilray for commencing demolition without a permit and ignoring a stop-work order, and to order the Tarros to restore the Grove Street School to its former condition. On February 27, 2007, a Superior Court hearing justice enjoined defendants from further demolition and ordered them to secure the premises from trespassers and against the elements

to avoid further deterioration of the building. The Tarros counterclaimed, asking the court, *inter alia*, to issue a writ of mandamus ordering the city to issue a demolition permit.

A bench trial was conducted over the course of seven days beginning on October 29, 2007, and ending on November 28, 2007. Although the Tarros made various contrary arguments at trial, there was no genuine dispute that they had commenced demolition without the required permit. Much of the trial testimony, therefore, was devoted to whether the Grove Street School required demolition as an unsafe or hazardous structure. The state building code permits a building official to order the demolition of any structure he or she deems to be either unsafe [3] or hazardous.[4]

---

3. General Laws 1956 § 23–27.3–124.1 provides:

"A building, sign, or structure shall be declared unsafe by the building official if any one of the following conditions exists upon the premises:

"(1) The building is vacant, unguarded, and open at doors or windows thereby permitting unauthorized entry; or

"(2) There is a hazardous accumulation of dust, debris, or other combustible material therein; or

"(3) There is a falling away, hanging loose or loosening of any siding, block, brick, or other building material; or

"(4) There is a deterioration of the structure, or structural parts, or a structural weakness exists whereby the continued use and occupancy would endanger the lives of the occupants or those using public or private land in the immediate area; or

"(5) The building has been partially destroyed or has been substantially damaged by the elements, acts of God, fire, explosion, or otherwise, and is vacant, regardless of whether or not the building is secured to prevent unauthorized entry; or

"(6) The building or structure has been vacant or unused for more than one hundred eighty (180) days, whether or not it has been boarded, guarded, and/or closed at all doors and windows, and has remained in a condition such that the repairs

necessary to make the building or structure safe and sanitary for occupancy exceed fifty percent (50%) of the fair market value of the building or structure in its present condition.

"(7) The building, sign, or structure constitutes a fire or windstorm hazard or is, in the opinion of the building official, otherwise dangerous to human life or public health, safety, and welfare; or

"(8) There is an unusual sagging or leaning out of plumb of the building or any parts of the building, and the effect is caused by deterioration or over-stressing; or

"(9) The electrical or mechanical installation or systems create a hazardous condition contrary to the standards of this code or the code in effect at the time of construction; or

"(10) An unsanitary condition exists by reason of inadequate or malfunctioning sanitary facilities or waste disposal systems; or

"(11) The use or occupancy of the building is illegal or improper because the building does not comply with the allowable areas, height, type of construction, fire resistance, means of egress, liveload, or other features regulated by the code in effect at the time of construction; or

"(12) Whenever the building or structure has been so damaged by fire, wind, or

*See* G.L.1956 §§ 23–27.3–124.1, 23–27.3–124.2 and 23–27.3–125.5. This authority obtains notwithstanding a structure's inclusion within the Industrial and Commercial Buildings District.

Gerald Vezina, a licensed structural engineer and member of the International Building Code Council, testified on behalf of defendants. He performed two visual inspections of the Grove Street School, in February and August 2007. Mr. Vezina observed that some of the exterior bricks had fallen and that "[t]he mortar between the brick layers [was] crumbling," which he stated eventually leads to deterioration. He noted pervasive rotting in the floors at the Grove Street School that included some of the supporting beams. He attributed cracks in the building's exterior and other degradation to thermal expansion and contraction that occurs when a building's temperature is not controlled, and deemed it sufficient to ultimately pose a risk that the building could collapse. Based on his inspection, Mr. Vezina opined that the building was structurally unsafe. He admitted, however, that he was not familiar with the provisions of the state building code pertaining to an unsafe structure.

Wilbur Yoder, an architect and architectural engineer employed by the Rhode Island School of Design, testified on behalf of the city.[5] His inspection of the property in May 2007 revealed substantial deterioration of surface materials such as plaster and lathe, but he determined that the building was structurally sound. He testified,

"Well, the system is a load-bearing, brick exterior wall load-bearing system. The joists frame into that wall and then are carried by interior partitions and in

flood, or has become so dilapidated or deteriorated as to become an attractive nuisance to children who might play therein to their danger."
Section 23–27.3–124.2 provides:
"When the whole or any part of any building, sign, or other structure shall be declared to be in an unsafe condition, the building official shall issue a notice of the unsafe condition to the owner of record describing the building or structure deemed unsafe, and an order either requiring that the building, sign, or structure be made safe or be demolished within a reasonable, stipulated time. All notices and orders shall be in writing and shall be delivered to the owners of the building by the building official or his or her designated agent or shall be sent by registered or certified mail to the last known address of the owner or owners. Orders to demolish any building, a sign, or structure shall also be issued to all mortgagees of record. If any owner or mortgagee cannot be located after due and diligent search, the notice and order shall be posted upon a conspicuous part of the building or structure, and the procedure shall be deemed the equivalent of personal notice. When a building or structure is ordered secured for any reason by the building offi-

cial, the owner shall board the building or structure in accordance with § 23–27.3–124.6 within seven (7) days, or the building official may cause the necessary work to be done to secure the building or structure. The cost of the work shall be billed to the owner and be a lien against the real property as provided in § 23–27.3–125.7."

4. Section 23–27.3–125.5 provides:

"Whenever a building is in such hazardous condition as to create an immediate danger to the public health, safety, and welfare, either because of its potential as a fire hazard or because of the danger from collapse, the building official may board up the building immediately at the owner's expense and may order its immediate demolition. In the event that the owner fails to comply immediately with the order to demolish then the building official may demolish the building at the expense of the owner."

5. Although Mr. Yoder testified extensively regarding his experience and education, he never was formally qualified as an expert witness. No objections ever were raised, however, about his opinion testimony.

some cases some beams. All of those—some of them were still covered with the original finish material, but all of those were in excellent condition that I could see. Most of the deterioration was either due to the finish materials or due to things like doors and windows. Some of those were broken and had either been vandalized or had been purposefully damaged. But the structure itself, even, and the demolition that was done did not affect the integrity of the rest of the building."

Although Mr. Yoder acknowledged that the Grove Street School met several criteria for designation as "unsafe" under § 23–27.3–124.1,[6] he concluded that the building was structurally sound.

Edward Civito, the supervisor of construction and acting alternate building official, testified that he inspected the Grove Street School in February 2007, after halting Bilray's demolition operation. He testified that at the time of his inspection, the property met several criteria for designation as an unsafe building under § 23–27.3–124.1, including that the building was vacant and open to unauthorized entry. He disputed, however, that a building meeting any of the criteria under § 23–27.3–124.1 automatically required him to declare the building unsafe. Rather, he asserted that the building could be boarded to protect the public and that it was the owner's responsibility to maintain the building.

The acting building official at the time of trial, Kerry Anderson, also testified. Although he was not the building official during the period leading up to the partial demolition, he testified that he conducted a partial inspection of the Grove Street School after a fire damaged the property in July 2007. After confirming the existence of holes in the floor, fallen plaster, debris inside the structure, and evidence of vandalism, Mr. Anderson concluded that the Grove Street School met the state building-code criteria for an unsafe building. He also acknowledged, in contradiction of Mr. Civito, that if a structure meets any of the criteria set forth in § 23–27.3–124.1, the state building code requires the building official to declare it unsafe. Despite this admission, he did not order a complete structural examination of the building or order either the restoration or demolition of the Grove Street School. Rather, he stated that he preferred to "wait and see what this case would bring." He also asserted that the building was not an imminent threat to public safety requiring immediate demolition under the hazardous-building provision of the state building code.

After the trial had concluded, the trial justice learned that the city had ordered the demolition of another historic building presenting similar safety concerns. On January 16, 2008, he reopened the record to solicit further testimony from Mr. Anderson regarding the divergent treatment of the two buildings.[7] Mr. Anderson conceded that his reasons for declaring the other building unsafe and hazardous were seemingly identical to the conditions he described at the Grove Street School. He defended his inconsistent treatment of the

---

6. Mr. Yoder testified that there was a hazardous accumulation of dust, debris, or other combustible materials, that the cost of repairing the building would exceed 50 percent of the fair market value of the building, that the building constituted a fire hazard, and that the sanitary facilities were inoperable.

7. An article in the Providence Journal prompted the court to reopen the case and call its own witness under Rule 614 of the Rhode Island Rules of Evidence. On February 4, 2008, the trial justice heard additional testimony from the building official.

two buildings by noting the relatively small size of the Grove Street School compared to the other building, about 9,000 square feet compared to approximately 75,000 square feet, respectively, and arguing that it was much more manageable and practical to order the boarding up and securing of the smaller Grove Street School. After detailed questioning by the trial justice, Mr. Anderson conceded that he based his decision not to make an official determination that the Grove Street School was unsafe and required demolition, at least in part, because of his concern that "a building owner * * * has illegally knocked down part of his building, and now he is looking to come to the City to bail him out."

After hearing all the evidence, the trial justice issued his decision on April 10, 2008. The trial justice concluded the evidence clearly established that defendants commenced demolition without a permit. The court assessed a fine of $4,868.98 against defendants, calculated by adding the $500 per day fine for violating the building code with the $1,868.98 cost of twenty-four-hour police surveillance immediately following defendants' attempted demolition.

The trial justice also found overwhelming evidence that the Grove Street School was unsafe according to § 23–27.3–124.1. The trial justice reasoned,

"After visiting the Grove Street School, hearing hours of expert testimony, and reviewing photographs of the building entered into evidence, the Court is convinced that, by any objective measure, the Grove Street School meets all, or nearly all, the criteria for an 'unsafe' building. Indeed, all of the experts in this case agreed that 'unsafe' conditions exist at the Grove Street School."

The Court went on to find that the building is in " 'such hazardous condition as to create an immediate danger' to the public" under § 23–27.3–125.5. He further ruled that the building code imposed on the building official an obligation "to take action upon finding that a particular structure is a danger to the public." He concluded, therefore, the building official had a ministerial duty to declare the Grove Street School "unsafe."

In addition, while acknowledging that the building official ordinarily retains discretion to either order the rehabilitation or demolition of an unsafe structure, the court found that his deliberate inattention to the condition of the Grove Street School was an abuse of discretion requiring the court to order demolition. The trial justice also concluded that the delay that would inevitably result if defendants were required to exhaust their administrative remedies made the administrative process inadequate. Specifically, "[t]he difficulty in securing the building from trespassers, the unstable condition of the floors, the location of the building in a compact residential neighborhood, and the risk of fire" meant that a delay would constitute an impermissible risk to public safety. Accordingly, the trial justice granted a writ of mandamus requiring the city to issue a demolition permit to the Tarros.

Final judgment was entered on April 14, 2008, from which the city timely appealed.[8] We issued a temporary stay of the judgment on April 18, 2008, which became permanent on April 21, 2008. On appeal, the city argues the trial justice erred in grant-

---

**8.** The defendants did not appeal from the portion of the judgment assessing a fine against them.

ing a writ of mandamus.[9]

## II

### Standard of Review

 It is well settled in this jurisdiction that the issuance of a writ of mandamus is an extraordinary remedy. "A writ of mandamus is an extreme remedy that will be issued only when: (1) the petitioner has a clear legal right to the relief sought, (2) the respondent has a ministerial duty to perform the requested act without discretion to refuse, and (3) the petitioner has no adequate remedy at law." *New England Development LLC v. Berg*, 913 A.2d 363, 368 (R.I.2007). "A ministerial function is one that is to be performed by an official in a prescribed manner based on a particular set of facts 'without regard to or the exercise of his own judgment upon the propriety of the act being done.'" *Id.* at 368–69 (quoting *Arnold v. Rhode Island Department of Labor and Training Board of Review*, 822 A.2d 164, 167 (R.I.2003)).

 When reviewing a decision granting or denying a writ of mandamus, we employ our usual standard of review to the findings of the trial court. *See Union Station Associates v. Rossi*, 862 A.2d 185, 193 (R.I.2004). "This Court will not disturb the findings of a trial justice sitting without a jury in a civil matter 'unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence or unless the decision fails to do substantial justice between the parties.'" *Id.* (quoting *Harris v. Town of Lincoln*, 668 A.2d 321, 326 (R.I. 1995)).

## III

### Discussion

 We first consider whether the Tarros had a clear legal right to a writ of mandamus compelling the building official to issue them a permit authorizing the demolition of the Grove Street School and whether the building official had a ministerial duty to issue it. It is uncontroverted that the building is included within the Industrial and Commercial District, and that a certificate of appropriateness must be obtained from the HDC before a demolition permit may be issued. City of Providence Zoning Ordinance § 501–501.14.4. It is also an uncontested fact that at no point did the Tarros ever secure a demolition permit for the razing of the Grove Street School.

The trial justice determined that the Tarros' right to demolish the building emanated from §§ 23–27.3–124.1, 23–27.3–124.2, and 23–27.3–125.5, stating "[t]hese statutes undoubtedly impose an obligation upon the building official to take action upon finding that a particular structure is a danger to the public." The trial justice concluded that because the condition of the building was "far south of deplorable, potentially injurious to the general public * * * the Tarros have a clear legal right, as owners of the Grove Street School, to compel the building inspector to act pursuant to §§ 23–27.3–124.1, 23–27.3–124.2, and 23–27.3–125.5 of the State's building code."

The record in this case is replete with evidence supporting the trial justice's de-

---

9. After the appeal was docketed in the Supreme Court, the building official, together with a committee created by executive order of the mayor to adopt a demolition policy for designated historic structures, inspected the Grove Street School. As a result, the building official, in a letter dated July 23, 2008, de-

clared the building "unsafe" within the meaning of § 23–27.3–124.1, and ordered the Tarros to restore the building to a safe and usable condition. The Tarros sought a stay of this order, which we granted on September 18, 2008.

termination that the Grove Street School was an unsafe building. Both Gerald Vezina and Wilbur Yoder testified that the building met several criteria enumerated in § 23–27.3–124.1, any one of which requires the building official to declare the building unsafe. In addition, Edward Civito and Kerry Anderson, both of whom have served as a building official, acknowledged that several of the statutory conditions were present. We are satisfied, therefore, that the trial justice's factual findings were well supported by the evidence. Moreover, we agree that upon such a finding, a building official has a clear legal duty to declare the structure unsafe under § 23–27.3–124.1. The statutory language is not precatory in this regard; rather, § 23–27.3–124.1 requires that if any one of the enumerated conditions exist the "building, sign, or structure shall be declared unsafe by the building official." We have long held that the use of the word "shall" denotes "something mandatory or the 'imposition of a duty.'" *Castelli v. Carcieri*, 961 A.2d 277, 284 (R.I. 2008) (quoting *Conrad v. State of Rhode Island—Medical Center–General Hospital*, 592 A.2d 858, 860 (R.I.1991)). It is our opinion, therefore, that the trial justice's finding that the Tarros had a clear legal right to compel the building official to act is well supported by the evidence. *See* 4 Arden H. Rathkopf and Daren A. Rathkopf, *The Law of Zoning and Planning* § 64:7 at 64–16 (2005) ("Where a duty to make a decision is imposed upon a body or officer, even though discretion is involved in the determination, mandamus will lie to compel the body or officer to make the decision, since there is no discretion involved in whether action is to be taken. The purpose of the writ in such cases is to eliminate the delays and losses which can ensue from bureaucratic procrastination in a governmental planning process.").

Although we have no occasion to disturb the trial justice's determination in this regard, we do not believe this leads inexorably to the conclusion that the remedy of mandamus requiring the demolition of the building is mandated. Mandamus will not be issued "to compel a public officer to perform an act the performance of which rests within his discretion." *Rossi*, 862 A.2d at 193 (quoting *Adler v. Lincoln Housing Authority*, 623 A.2d 20, 25 (R.I.1993)). However, we have stated that mandamus may be used to require the reasonable exercise of discretion. *Newman v. Mayor of Newport*, 73 R.I. 435, 436, 57 A.2d 180, 181 (1948) ("he can only be directed to perform his duty under the law, but he cannot be directed to perform it in a particular way"). "If the performance of the duty involves the exercise of discretion or judgment, the writ will not be issued except in cases where there has been an abuse of discretion." *Adler*, 623 A.2d at 26 (quoting *McLyman, ex rel. Hogan v. Holt*, 51 R.I. 96, 98, 151 A. 1, 2 (1930)).

"In Rhode Island the local building official is a municipal administrative officer who is bound to follow the zoning ordinance and applicable statutory provisions pursuant to which he or she is authorized to act." *Pitocco v. Harrington*, 707 A.2d 692, 696 (R.I.1998); *see also* § 23–27.3–107.1. We look, therefore, to the plain language of the provisions of the state building code that empower a building official to bypass the usual HDC approval process for structures within the Industrial and Commercial Buildings District and order the demolition of a structure.

Section 23–27.3–124.2 provides that when a building official declares that a building is unsafe, he or she shall issue an order that the building either be made safe or demolished within a reasonable period of time. This choice involves a clear exer-

cise of discretion. Any assertion that the duty of a building official under § 23–27.3–124.2 is ministerial in nature is refuted by the very language creating the obligation. We agree with the trial justice that Mr. Anderson's refusal to take any action with respect to the Grove Street School because he did not want to reward the Tarros for attempting to demolish it without a permit was an abuse of discretion. Whatever the cause of the building's unsafe condition, a building official may not place the public at risk to punish the owner for his culpability. Yet, it is our considered opinion that the trial justice's grant of a writ of mandamus requiring the city to issue a demolition permit was not warranted and improperly encroached on the building official's discretion. An appropriate remedy might have been a writ of mandamus requiring the building official to declare the Grove Street School unsafe and compelling him to exercise his reasonable discretion in determining whether the building should be demolished or made safe. Any order that he issued may then have been appealed to the local board of appeals. Section 23–27.3–124.3. We conclude, therefore, that the building official's duty under § 23–27.3–124.2 was not ministerial in nature.

■■■ The trial justice also made a finding that the Grove Street School met the standard for designation as a hazardous building under § 23–27.3–125.5. Although we accord substantial deference to the factual findings of the trial justice, we discern insufficient evidentiary support for his finding that the Grove Street School was in "such hazardous condition as to create an immediate danger to the public." Section 23–27.3–125.5. Any such finding must be based on specific and credible evidence. In this case, the only witness to testify that the building was structurally unsafe was Gerald Vezina. He did not indicate, however, that the building was an immedi-

ate danger to the public health, safety, and welfare because of its risk for collapse or conflagration, the sole bases for a determination that the structure is hazardous. Wilbur Yoder, testifying on behalf of the city, determined that the building was structurally sound. In addition, both the former and current building officials declined to characterize the Grove Street School as "hazardous." Mr. Anderson, whom the trial justice characterized as "one of the more trustworthy witnesses in this case," determined that the Grove Street school "doesn't pose an imminent threat to the public safety." Moreover, even if the Tarros had presented evidence that the Grove Street School was in a hazardous condition, the building official still retains discretion to determine whether the building should be demolished. In contrast to the mandatory language of § 23–27.3–124.1, § 23–27.3–125.5 provides that "the building official may board up the building immediately * * * and may order its immediate demolition." Although a building official has an obligation to ensure public safety, he or she is not required by statute to order that a hazardous building be demolished. It is our opinion that the trial justice erred in finding that the Tarros had a clear legal right to demolish the Grove Street School and that the city had a ministerial duty to issue a demolition permit.

## IV

### Conclusion

For the reasons stated in this opinion, we quash the writ of mandamus and vacate that portion of the judgment granting said writ. The judgment shall remain in full force and effect in all other respects. We are mindful, however, that the Grove Street School has been sitting vacant for more than a year since the judgment was entered and undoubtedly is deteriorating

further. We remand the papers to the Superior Court, therefore, and direct that an order be entered requiring the City of Providence to declare the building unsafe under § 23–27.3–124.1 and to take whatever action may be appropriate with respect to the Grove Street School in light of its responsibility to safeguard the public's health, safety and welfare. Any such order shall supersede the order that the building official issued on July 23, 2008, which order was stayed by this Court on September 18, 2008.

Justice ROBINSON did not participate.