DECISION
This case is before the Court on Plaintiff, Sand Trace, LLC's motions for a preliminary injunction or, in the alternative, a writ of mandamus. For the reasons stated herein, the Court denies Plaintiff's request for injunctive relief but grants Plaintiff's petition for a writ of mandamus.
 FACTS AND BACKGROUND
The Plaintiff, Sand Trace, LLC ("Sand Trace"), is a private, for-profit real estate development company. (Pl.'s Mem. 3.)[1] It owns and seeks to develop property in Defendant, Town of Smithfield ("Smithfield" or "the Town.") (Pl.'s Mem. 3.) This controversy stems from the Town's Zoning Board of Review Clerk's refusal to accept Sand Trace's comprehensive permit application to build 300 housing units, 75 of which would be low or moderate income housing, on Assessor's Plat 46, Lot 10. (Pl.'s Mem. 3-4.) *Page 2 
The Rhode Island Low and Moderate Income Housing Act, G.L. 1956 § 45-53-1 et seq., encourages "housing opportunities for low and moderate income individuals and families" by providing a streamlined permit application process for affordable housing developments. G.L. 1956 §§ 45-53-2, -4; East Bay CommunityDevelopment Corp. v. Zoning Bd. Of Review of the Town ofBarrington, 901 A.2d 1136, n. 18 (R.I. 2006). As developers ordinarily must go before multiple local boards to obtain the requisite permits to build a new housing development, developers availing themselves of the Low and Moderate Income Housing Act "may submit to the local review board a single application for a comprehensive permit to build that housing[.]" Section 45-53-4(a);see Town of Smithfield v. Churchill Banks Companies,924 A.2d 796, n. 1 (R.I. 2007) (characterizing the comprehensive permit application process as "one stop shopping" for developers.)
Any municipality that has an approved affordable housing plan and "that is meeting local housing needs" within the meaning of the statute may by ordinance limit the number of housing units in a comprehensive permit application to "an aggregate of one percent . . . of the total number of year-round housing units in the town[.]" Sections 45-53-3(10), -4(a)(4)(xii). This limitation applies to applications from for-profit developers only. Section 45-53-4(a)(4)(xii). Pursuant to this statutory provision, the Town Council enacted Smithfield Code section 68-5 on May 3, 2005. Smithfield, R.I. Code § 68-5. This ordinance reads:
 The Zoning Board of Review shall act on all applications seeking a comprehensive permit pursuant to R.I.G.L. § 45-53 or any successor thereto. There shall be a limit on the annual calendar-year total number of dwelling units in comprehensive permit applications from for-profit developers to an aggregate of 1% of the total number of year-round housing units in the Town, as recognized in the Town's Affordable Housing Plan. The Zoning Board of Review shall not accept applications which exceed the stated limit. Notwithstanding the timetables set forth in R.I.G.L. § 45-53-4, the Zoning Board shall consider comprehensive permit *Page 3 
applications from for-profit developers sequentially in the order in which they are submitted. Smithfield, R.I. Code § 68-5 (emphasis added.)
On December 31, 2008, Sand Trace submitted a comprehensive permit application to the Town. (Pl.'s Mem. 4.) The subject property is identified in the Town's Affordable Housing Plan as land suitable for construction of affordable housing. (Pl.'s Mem. 4.) The application proposed a development of 300 housing units, 75 of which would be low or moderate income housing. (Pl.'s Mem. 4.) This number of housing units exceeds one percent of the number of year-round housing units. (Letter of January 7, 2009.) In conformance with section 68-5 of the Smithfield Code, the Zoning Board's Clerk wrote to the Plaintiff on January 7, 2009 to inform it that its comprehensive permit application "cannot be accepted because it exceeds the 1% limit of the total number of year-round housing." (Letter of January 7, 2009.)
 ANALYSIS
1. Mandamus is a Limited Remedy
Mandamus is an extraordinary remedy available only when all three of the following conditions are met: "`(1) the petitioner has a clear legal right to the relief sought, (2) the respondent has a ministerial duty to perform the requested act without discretion to refuse, and (3) the petitioner has no adequate remedy at law.'"City of Providence v. Tarro, 973 A.2d 597, 604 (R.I. 2009) (quoting New England Development LLC v. Berg,913 A.2d 363, 368 (R.I. 2007)). A "ministerial" duty "is one that is to be performed by an official in a prescribed manner based on a particular set of facts without regard to or the exercise of his own judgment upon the propriety of the act being done." Id.
(internal quotations omitted.) Because Sand Trace has a "clear legal right" to have the Town accept its comprehensive permit application, a writ of *Page 4 
mandamus compelling the Zoning Board's Clerk to accept Sand Trace's comprehensive permit application will issue.See section 45-53-4(a)(4).
2. The Town's Authority To Pass an Ordinance Pursuantto Section 45-53-4(a)(4)(xii)
Sand Trace urges the Court to interpret § 45-53-4(a)(4)(xii) as restricting the right to impose a one percent limitation on the number of affordable housing units to towns that have met certain affordable housing-related benchmarks. (See Pl.'s Mem. 9.) However, the Court cannot adopt this interpretation because the conditions on authorization to pass such an ordinance — that the town have "an approved affordable housing plan" and that the town be "meeting local housing needs" — have clear definitions under the statute and do not support the Plaintiff's interpretation. See sections 45-53-3(7), -3(10), -4(a)(4)(xii). "Meeting housing needs" is defined as "adoption of the implementation program of an approved affordable housing plan and the absence of unreasonable denial of applications that are made pursuant to an approved affordable housing plan in order to accomplish the purposes and expectations of the approved affordable housing plan." Section 45-53-3(10). As defined by the statute, "meeting housing needs" is not tied to meeting housing benchmarks.See id. Rather, a town that has an approved affordable housing plan and has not unreasonably denied comprehensive permit applications that are made "in order to accomplish the purposes and expectations of the approved affordable housing plan" may by ordinance limit the number of units in comprehensive permit applications to one percent of the town's year-round housing stock. Sections 45-53-3(10), -4(a)(4)(xii). The Town of Smithfield has an affordable housing plan. (Pl.'s Mem. 3.) In addition, Sand Trace has not shown that Smithfield unreasonably denied comprehensive permit applications.
The somewhat extreme relief granted to cities and towns by § 45-53-4(a)(4)(xii), read in conjunction with § 45-53-3(10), makes sense in light of the rocky travel of the Rhode Island Low *Page 5 
and Moderate Income Housing Act. When the General Assembly amended chapter 45-53 to allow for-profit developers to submit comprehensive permit applications, "[m]unicipalities faced a deluge of applications from for-profit developers seeking to take advantage of the streamlined review process." Town of Burrillville v. PascoagApartment Associates, 950 A.2d 435, 440 (R.I. 2008.) In response to the overwhelming number of comprehensive permit applications received by municipalities, the General Assembly passed a temporary moratorium (which has since expired) on comprehensive permit applications from for-profit developers in 2004. Id.;see also § 45-53-4(b); Pub.L. 2004, ch. 3. Soon afterwards, the General Assembly amended § 45-53-4 to include § 4(a)(4)(xii), authorizing municipalities to limit the number of housing units in comprehensive permit applications from for-profit developers. Section 45-53-4(a)(4)(xii); seealso Pub.L. 2004, ch. 286. These legislative acts, together with the plain language of § 45-53-3(10) and § 45-53-4(a)(4)(xii), show that the General Assembly meant to provide Rhode Island municipalities with considerable relief from the often drastic effects of the Low and Moderate Income Housing Act.
In light of the fact that the Town meets the requirements in § 45-53-4(a)(4)(xii), it is authorized to limit the number of affordable housing units in a comprehensive permit application to one percent of its total year-round housing stock by ordinance. However, mandamus will issue in this case because the manner in which the Town has chosen to impose this limit — by refusing to accept applications for for-profit projects that exceed one percent — contravenes the clear terms of chapter 45-53. *Page 6 
3. The Necessity of Accepting Applications from For-ProfitDevelopers
Section 45-53-4(a)(4)(xii) does not overtly address the issue of whether municipalities entitled to impose the one percent limitation must accept for-profit comprehensive permit applications; however, the section directs that "notwithstanding the timetables set forth elsewhere in this section, the local review board shall have the authority to consider comprehensive permit applications from for-profit developers, which are made pursuant to this paragraph, sequentially in the order in which they are submitted." Section 45-53-4(a)(4)(xii). The necessary implication of this provision is that, while qualifying municipalities are still required to accept applications that exceed the one percent limit, they may disregard the time frames set out elsewhere in the statute in considering those applications. Section 45-53-4(a)(4)(iii)-(iv), -(ix), -(xii).
In addition, the plain language of the statute indicates that accepting comprehensive permit applications is mandatory. Section 45-53-4(a)(4), entitled "Review of applications," mandates that "[a]n application filed in accordance with this chapter shall be reviewed by the local review board at a public hearing . . ." (Emphasis added.) Logically, in order to review an application, the designated local review board must first accept the application. In general, "the use of the word `shall' contemplates something mandatory or the `imposition of a duty.'"Castelli v. Carcieri, 961 A.2d 277, 284 (2008) (quotingConrad v. State of Rhode Island-Medical Center-GeneralHospital, 592 A.2d 858, 860 (R.I. 1991)). The word "shall" strongly implies that the General Assembly meant for the task of accepting and reviewing comprehensive permit applications to be compulsory. *Page 7 
The importance of generating a record for administrative review further militates in favor of reading the statute as requiring the Town to accept comprehensive permit applications.See § 45-53-4(a)(4)(viii) (creating right of appeal of local board decisions on comprehensive permit applications to the state housing appeals board); § 45-53-4(a)(4)(v) (requiring local board to make certain findings, supported by evidence and reasons for arriving at those findings, on the record); § 45-53-5(b) (mandating that the local review board must send a copy of "its decision and the reasons for that decision to the appeals board" upon notice of appeal); JCM, LLC v. Town of Cumberland Zoning Board ofReview, 889 A.2d 169, 176-77 (R.I. 2005) (holding that, in the context of appeal of a zoning board's denial of a comprehensive permit application, "a competent decision replete with factual findings is a prerequisite to SHAB's giving meaningful review to any decision of a zoning board . . . a zoning board's duty to produce a competent factual record is without exception"). If the Town does not accept comprehensive permit applications that exceed the one percent limit, the applicants may be prevented from obtaining appellate review to the State Housing Appeals Board ("SHAB").
For the foregoing reasons, the Town lacked authority to pass an ordinance directing the Zoning Board of Review not to accept applications that exceed the one percent limit. This portion of Smithfield Code section 68-5 conflicts with chapter 45-53 of the General Laws.
A writ of mandamus will issue to compel the Zoning Board Clerk to accept Sand Trace's comprehensive permit application. As outlined above, Sand Trace has a clear legal right to have the Town accept its comprehensive permit application. Accepting an application is a ministerial act that neither the Clerk nor the Zoning Board of Review has the discretion to refuse to perform. The Clerk and the Board must respond with a predetermined action (accepting and reviewing the application) to a particular stimulus (submission of an application) without exercising judgment. *Page 8 See Tarro, 973 A.2d at 604. In addition, because the Town's refusal to accept Sand Trace's application precludes the possibility of administrative appeal, Sand Trace has no remedy at law available to it. Thus, Sand Trace meets the requirements for issuance of mandamus articulated in City ofProvidence v. Tarro and other cases. 973 A.2d at 604.
4. The Town's Approach to Comprehensive Permits
In its supplemental memorandum and at oral argument, the Town raised the specter of replacing the comprehensive permit application process with a bifurcated process involving a zoning map amendment from the Town Council and subsequent application to the Planning Board "in the same manner as for land development projects." (Def.'s 11/06/2009 Mem. 10.) The Court views this prospect with considerable skepticism. The General Assembly passed the Rhode Island Low and Moderate Income Housing Act "to provide for housing opportunities for low and moderate income individuals and families[.]" Section 45-53-2. It took this action to address "an acute shortage of affordable, accessible, safe, and sanitary housing for its citizens of low and moderate income[.]" Id. As discussed above, the language of the statute imposes a duty upon Rhode Island's municipalities to accept and review comprehensive permit applications. See section 45-53-4(a)(4);Castelli, 961 A.2d at 284 (quoting Conrad,592 A.2d at 860).
Streamlining the development process into one application is the cornerstone of the Rhode Island Low and Moderate Income Housing Act. The Act states:
 . . .Procedure for approval of construction of low or moderate income housing. — (a) Any applicant proposing to build low or moderate income housing may submit to the local review board a single application for a comprehensive permit to build that housing in lieu of separate applications to the applicable local boards. Section 45-53-4(a) (emphasis added.) *Page 9 
This "streamlined and expedited application procedure" was intended as an incentive to builders of affordable housing who otherwise may have been deterred by "cumbersome development application requirements." JCM, 889 A.2d at 173 (quoting Kaveny v. Townof Cumberland Zoning Board of Review, 875 A.2d 1, 5 (R.I. 2005) (other quotations omitted.)) The fact that the Act "opened the floodgates" to a "deluge of applications from for-profit developers seeking to take advantage of the streamlined review process" is a testament to the effectiveness and importance of the single-application incentive. See Pascoag ApartmentAssociates, 950 A.2d at 440. Replacing the comprehensive permit application process with a new, bifurcated system, as the Town professes a desire to do (see Def.'s 11/06/2009 Mem. 5), would violate both the plain language and the purpose of the Rhode Island Low and Moderate Income Housing Act.
The Town suggests it may disregard the mandatory dictates of chapter 45-53 because it amended its Affordable Housing and Comprehensive Plans. (Def.'s November 6, 2009 Mem. 9.) Tellingly, the Town cites no authority for the proposition that its Comprehensive Plan supersedes a state statute. To address the Town's scheme in more depth here would exceed the scope of the relief sought by Sand Trace. Thus, the Court will not reach the issue of the sustainability of the Town's plan to eliminate comprehensive permit applications today.[2] Suffice it to say that the Court is skeptical.
 CONCLUSION
For the reasons set forth above, a writ of mandamus will issue to compel the Clerk of the Town of Smithfield Zoning Board of Review to accept Sand Trace's comprehensive permit application.
[1] Plaintiff's memorandum, as referenced throughout this Decision, is dated August 7, 2009.
[2] It is noteworthy that the appeals are considered by the SHAB per § 45-53-5 et seq. Therefore, the Court strictly tailors the writ of mandamus to the application issue.